2010 WY 33

**Martin HERNANDEZ, Appellant
(Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

**No. S–09–0065.**

Supreme Court of Wyoming.

March 23, 2010.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel; Kirk Allan Morgan, Senior

Assistant Appellate Counsel. Argument by Mr. Morgan.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny Lynn Craig, Assistant Attorney General. Argument by Ms. Craig.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Martin Hernandez challenges his convictions on four charges relating to illegal drugs. We will affirm.

### ISSUES

[¶ 2] Mr. Hernandez presents two appeal issues. We will discuss them in this order:

1. Did the district court err when it denied Appellant's motion to suppress evidence obtained after a traffic stop, when the State did not meet its burden of proof to justify the warrantless search and seizure; and did plain error occur when the district court failed to address the appropriateness of the search and seizure after the initial stop?

2. Whether the cumulative effect of the State introducing irrelevant and prejudicial evidence, and the prosecutor making an inappropriate community protection argument, denied Mr. Hernandez his right to a fair trial?

### FACTS

[¶ 3] On February 7, 2008, Agent Ford of the Wyoming Division of Criminal Investigation interviewed two people in Rawlins, Wyoming, who had recently been arrested on illegal drug charges. The two informed him that they had purchased methamphetamine several times from a man named James Moxley. They agreed to cooperate with Agent Ford, and made a controlled purchase from Mr. Moxley, who was arrested after the transaction. He also agreed to cooperate, and told Agent Ford that he was purchasing methamphetamine from three men staying at a local motel.

[¶ 4] Agent Ford began conducting surveillance of the three men at the motel. On February 19, 2008, the motel manager telephoned Agent Ford and told him that at least one of the men was planning to check out of the motel and leave town. Agent Ford contacted Deputies Craig and Rakoczy of the Carbon County Sheriff's Department and asked for their assistance. Agent Ford then went to the motel, where he saw one of the men put something into a vehicle and drive away. Agent Ford informed the Deputies which way the vehicle was going. The Deputies spotted the vehicle, and as they watched, the driver turned a corner without signaling. They made a traffic stop, and identified the driver as Mr. Hernandez.

[¶ 5] Agent Ford arrived soon after the traffic stop, and began questioning Mr. Hernandez. Lieutenant Rosentreter of the Carbon County Sheriff's Department also arrived at the scene, bringing his drug-detecting dog. The dog alerted on the vehicle, indicating drugs inside. The vehicle was searched, and the officers found a backpack containing approximately 20 grams of methamphetamine and 5 grams of cocaine, along with a digital scale, several razor blades, and packaging material. Mr. Hernandez admitted that the backpack was his, and later admitted that documents in the backpack were his.

[¶ 6] Mr. Hernandez was arrested, and was found to be carrying several hundred dollars in cash. He was charged with two counts of possession of a controlled substance, one for methamphetamine and one for cocaine, in violation of Wyo. Stat. Ann. § 35-7-1031(c)(ii) (LexisNexis 2007), and with two counts of possession of a controlled substance with intent to deliver, again one for methamphetamine and one for cocaine, in violation of Wyo. Stat. Ann. § 35-7-1031(a)(i). He was also charged with one count of conspiracy to deliver a controlled substance, in violation of Wyo. Stat. Ann. §§ 35-7-1042 and 35-7-1031(a)(i). The conspiracy charge was soon dismissed by the State, however, and Mr. Hernandez was bound over to the district court for trial on the remaining four counts.

[¶ 7]   Mr. Hernandez filed a pretrial motion to suppress, claiming that he had been unlawfully stopped and, accordingly, that the evidence obtained in the subsequent search was inadmissible at trial.   After a hearing, the district court denied the motion.   A jury trial commenced on October 8, 2008, and Mr. Hernandez was found guilty the next day.   On January 12, 2009, Mr. Hernandez was sentenced.   The district court merged the two counts relating to methamphetamine, and sentenced him to ten to twenty years on those charges.   It also merged the two counts relating to cocaine, and sentenced Mr. Hernandez to ten to twenty years on those charges, with the two sentences to run concurrently.   Mr. Hernandez filed a timely notice of appeal.

## DISCUSSION

### Issue 1. Denial of Motion to Suppress

[¶ 8]   On appeal, Mr. Hernandez does not dispute that the officers stopped him after he failed to signal a turn, which was a traffic violation.   He concedes that "a traffic stop initiated by a law enforcement officer after personally observing a traffic violation is supported by probable cause and does not violate Article 1, Section 4 of the Wyoming Constitution, regardless of the officer's primary motivation." *Fertig v. State*, 2006 WY 148, ¶ 28, 146 P.3d 492, 501 (Wyo. 2006); *see also Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).   However, Mr. Hernandez relies on the point that the "scope, duration, and intensity of the seizure, as well as any search made by the police subsequent to [a] stop, remain subject to the strictures of Article 1, Section 4, and judicial review." *Fertig*, ¶ 28, 146 P.3d at 501.   Any detention or search pursuant to a traffic stop must be "reasonable under all the circumstances." *O'Boyle v. State*, 2005 WY 83, ¶ 31, 117 P.3d 401, 410 (Wyo.2005).

[¶ 9]   Mr. Hernandez does not affirmatively contend that his detention and search were unreasonable.   Rather, the thrust of his argument is that the prosecution presented absolutely no evidence about the scope, duration, or intensity of the detention and seizure, and thereby failed to meet its burden of showing that they were reasonable under all of the circumstances.   The record reflects that the two officers at the hearing testified about the traffic stop and events leading to it, but neither testified about anything that occurred after the initial stop.   Mr. Hernandez is correct that the prosecution presented no evidence about the scope, duration, or intensity of his detention and search.

[¶ 10]   But the record also shows why the prosecution did not present this evidence.   Mr. Hernandez's motion to suppress challenged only the validity of his initial stop, not the reasonableness of his detention or search.   The memorandum filed in support of his motion to suppress stated a single issue: "that the officer lacked a valid basis to stop Mr. Hernandez."   It asked the district court to decide a single question: "if the initial stop conforms to the standards created for a warrantless investigatory detention."   Both this memorandum and the "Corrected" memorandum filed later focused exclusively on the initial stop.

[¶ 11]   In reliance on these memoranda, the prosecutor announced at the beginning of the hearing on the motion to suppress that she was "going to focus specifically on the stop, the traffic stop alone."   The district court agreed that "the issue that we're all going to address here is the pretextual nature of this stop."   The prosecutor then said she had talked with defense counsel, and understood that "the argument from [the defense] perspective is they were going to stop Mr. Hernandez regardless of whether there was probable cause or not, and so it didn't even matter whether or not there was a traffic violation."   When the prosecutor invited defense counsel to "Correct me if I'm wrong," defense counsel confirmed, "That is correct."   Later, defense counsel told the district court that "the whole premise of this suppression hearing is that illegal turn or not ... this vehicle was pulled over because Agent Ford told them to pull it over."   Based on the evidence and arguments of counsel, the district court wrote in its decision letter that it had

determined that Deputy Craig was justified in stopping Hernandez due to the

traffic violation that Deputy Craig watched Hernandez commit. Hernandez makes no complaints beyond this initial stop. Accordingly, the Court need not proceed further with its analysis.

[¶ 12] Both parties assert that, because Mr. Hernandez did not raise the issue of his detention and search with the district court, we should apply the plain error standard of review. But this is not a case in which the issue was simply not raised below. It is a case in which Mr. Hernandez, through his counsel, affirmatively represented to the district court and the prosecution that the reasonableness of his detention and search was not at issue. "The doctrine of 'invited error' embodies the principle that a party will not be heard to complain on appeal of errors which he himself induced or provoked the court or the opposite party to commit." *Schott v. State*, 864 P.2d 38, 39 (Wyo.1993). "Generally, defense counsel must have solicited or otherwise acted affirmatively for the invited error doctrine to apply." *James v. State*, 998 P.2d 389, 393 (Wyo.2000). The record in this case leaves no doubt that Mr. Hernandez's counsel made affirmative statements that induced the prosecutor not to present evidence about the detention and search, and the district court not to consider the issue of their reasonableness. Applying the doctrine of invited error, we need not address this issue further. *Callen v. State*, 2008 WY 107, ¶ 6 n. 5, 192 P.3d 137, 141 n. 5 (Wyo.2008).

### Issue 2. Prosecutorial Misconduct

[¶ 13] Although Mr. Hernandez presents this as a single issue, it is better analyzed as three related claims. First, he claims that the district court improperly allowed the prosecution to introduce irrelevant and prejudicial evidence of drug sales that did not directly involve Mr. Hernandez. Second, he claims that the prosecution's closing argument included improper comments urging the jurors to help fight the drug problem in Rawlins and Carbon County. Third, he claims that the combined effect of the irrelevant evidence and the prosecutor's inappropriate comments served to deny him a fair trial. We will discuss each of these three claims in turn.

#### a. Irrelevant and Prejudicial Evidence

[¶ 14] None of the evidence challenged by Mr. Hernandez on appeal was objected to at trial. "We have stated repeatedly that an objection is not properly preserved on appeal unless the objection was made at trial." *Causey v. State*, 2009 WY 111, ¶ 17, 215 P.3d 287, 293 (Wyo.2009). Consequently, we can reverse a trial court's decisions on the admission of this evidence only for plain error. W.R.A.P. 9.05; W.R.Cr.P. 52(b). "Plain error exists when: 1) the record is clear about the incident alleged as error; 2) there was a transgression of a clear and unequivocal rule of law; and 3) the party claiming the error was denied a substantial right which materially prejudiced him." *Guy v. State*, 2008 WY 56, ¶ 9, 184 P.3d 687, 692 (Wyo.2008), quoting *Talley v. State*, 2007 WY 37, ¶ 9, 153 P.3d 256, 260 (Wyo.2007).

[¶ 15] Mr. Hernandez challenges certain evidence admitted during his trial as irrelevant. W.R.E. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evidence that is not relevant is not admissible. W.R.E. 402. "In criminal cases, evidence is relevant when it tends to prove or to disprove an element of the charged crime." *Hodges v. State*, 904 P.2d 334, 340 (Wyo. 1995).[1]

---

1. Mr. Hernandez also challenges the evidence as highly prejudicial, but oddly enough, never cites or refers to W.R.E. 403, the rule of evidence that deals with unfairly prejudicial evidence. He presents no analysis of whether the evidence was admissible or inadmissible under W.R.E. 403. Instead, he relies on this statement in a federal decision: "Where the evidence is of very slight (if any) probative value, it's an abuse of discretion to admit it if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *United States v. Hitt*, 981 F.2d 422, 424 (9th Cir.1992). This federal case may be persuasive, but it is not binding authority here. It could be used to support an argument under Wyoming law, but should not be cited to the

[¶ 16] The first evidence Mr. Hernandez characterizes as irrelevant is the testimony of Agent Ford. Agent Ford related that he interviewed two people who had been arrested on drug charges. They told him they had purchased drugs from Mr. Moxley, and agreed to participate in a controlled purchase from Mr. Moxley. Agent Ford testified about the arrest of Mr. Moxley, who told him he was purchasing methamphetamine from three men who were staying at a local motel. One of the three men turned out to be Mr. Hernandez. In his brief, Mr. Hernandez argues that:

> All of the evidence surrounding the arrest [of the two people and Mr. Moxley], and the subsequent investigation into the dealing of methamphetamine in Rawlins is completely irrelevant and is highly prejudicial. The evidence did not go to an element of any of the crimes Mr. Hernandez was charged with, but instead served only to establish that there is a methamphetamine problem in Carbon County.

[¶ 17] Mr. Hernandez's characterization of the testimony is exaggerated. In reality, Agent Ford's testimony related directly to the events culminating in the arrest of Mr. Hernandez: the two arrested persons led to Mr. Moxley, and Mr. Moxley led to Mr. Hernandez. A law enforcement officer's testimony about the course of an investigation leading to a defendant's arrest is not irrelevant evidence. *Evenson v. State*, 2008 WY 24, ¶ 10, 177 P.3d 819, 823 (Wyo.2008) (Admissible testimony from a police officer "described the course of his investigation and how he became aware of [the defendant's] involvement in the fight."). In Agent Ford's testimony, he did mention the names of one or two other people peripherally involved with Mr. Moxley, and one other location where drug sales may have occurred. Although these were not directly related to Mr. Hernandez, they were no more than brief references to minor details. They do not amount to a general discussion of a metham-

phetamine problem in Carbon County, as Mr. Hernandez claims. We find nothing in the challenged portions of Agent Ford's testimony that should have been excluded as irrelevant.

[¶ 18] Mr. Hernandez also challenges testimony from Mr. Moxley about the amounts of methamphetamine he purchased from the three men at the motel. Mr. Moxley explained that he was purchasing it for another unnamed person, who would then give Mr. Moxley a small amount of the methamphetamine. Contrary to Mr. Hernandez's claim, this evidence was not irrelevant evidence about the general methamphetamine problem in Carbon County. It was about methamphetamine purchases made directly from Mr. Hernandez and his colleagues. Mr. Hernandez was charged with possession of illegal drugs with intent to deliver. Evidence of earlier deliveries tended to prove the element of intent to deliver. It was relevant and admissible evidence.

[¶ 19] Mr. Hernandez also challenges testimony that Mr. Moxley was "selling a lot of drugs" in Rawlins, to nine or ten people per day, at four or five times a day per person. We agree with Mr. Hernandez that this testimony related more to a general drug problem in the community, and less to Mr. Hernandez. But even if this evidence is irrelevant, the record reflects that it was not introduced by the prosecution. It was introduced during defense counsel's cross-examination of Mr. Moxley. The district court's admission of evidence elicited by Mr. Hernandez's own defense counsel, relevant or not, cannot serve as a basis for reversing Mr. Hernandez's convictions.

[¶ 20] Finally, Mr. Hernandez challenges testimony from Special Agent Nicholas Bisceglia, who testified that "Methamphetamine is a major problem" in Carbon County. In isolation, this testimony seems irrelevant. In context, it is less clearly so.

exclusion of W.R.E. 403. This makes us doubt that Mr. Hernandez intends to argue that the evidence should have been excluded under W.R.E. 403, and we will not analyze his argument that way. Instead, we understand his argument to be that the prejudicial effect of the

evidence, together with improper closing argument from the prosecutor, combined to deny him a fair trial. We take up that contention later, but at this stage, consider only whether the evidence was inadmissible because it was irrelevant.

The main point of Agent Bisceglia's testimony was that, based on his experience, a person in possession of a relatively large amount of methamphetamine, a digital scale, packaging materials, and a substantial amount of cash is more likely a drug distributor than a drug user.[2] To establish his level of experience, Agent Bisceglia testified that he investigated drug-related crimes on a daily basis, and that he had been involved in a large number of drug cases. In this context, his comment about a methamphetamine problem in Carbon County was meant to show that there were many drug crimes for him to investigate, and to help establish his experience with drug distributors and users.

[¶ 21] Agent Bisceglia's comment might be considered relevant because it helped to establish his credentials, or irrelevant because it did not tend to prove any element of the charges against Mr. Hernandez. If an objection had been made, the district court could have exercised its discretion in deciding if it was relevant or irrelevant. But defense counsel did not object, which may have been a sound strategic decision not to draw attention to Agent Bisceglia's brief and undramatic remark. "Under the plain error standard of review, we reverse a trial court's decision only if it is so plainly erroneous that the judge should have noticed and corrected the mistake even though the parties failed to raise the issue." *Causey*, ¶ 19, 215 P.3d at 293. If the district court erred by not taking *sua sponte* action to strike Agent Bisceglia's remark, it was not so plainly erroneous as to justify a reversal of Mr. Hernandez's convictions.

### b. Prosecutor's Closing Argument

[¶ 22] In her closing argument, the prosecutor responded as follows to attacks on the credibility of Mr. Moxley:

Crimes conceived in hell, ladies and gentlemen, don't have angels for witnesses. People who are involved in drug activity, people who are buying, people who are selling, people who are using are not going to be the *crème de la crème* of Rawlins. We are not going to get those people here to tell you what's going on in the underworld.

We rely on people like Mr. Moxley who purge themselves when they get caught. And there's no doubt he was caught. And there's no doubt that he is giving information, and *he contributed to the problem that Special Agent Bisceglia told you was all over the place in this town. But we have taken care of Mr. Moxley. He's been in jail. He told you that.*

*And now we got* [sic] *to take care of somebody else, because methamphetamine is so bad, so prevalent here in Rawlins.* We are going to see the seedier side of human nature in cases like this. It can't be avoided. But don't be fooled that just because the defendant says we have Moxley and he's got an agenda and he's a snitch and what does he want out of this. What difference does it make? What matters is that he gave information to law enforcement which resulted in numerous arrests and numerous convictions.

We need the Moxleys, not because we want them using in our town, but because we want them telling us what's going on. It is a side of town that some of us just don't even know about.

(Emphasis added.) On appeal, Mr. Hernandez challenges the emphasized comments as improper "community outrage" arguments. Because no objection was made at trial, we again apply the plain error standard. The quoted passage leaves the record clear about the incident alleged as error, so we turn to the question of whether the prosecutor's comments transgressed a clear and unequivocal rule of law.

[¶ 23] They did. The rule of law against community outrage arguments is clear and unequivocal. "This Court has frequently admonished prosecutors to seek con-

---

2. In the transcript, Agent Bisceglia's testimony reads like the sort of opinion testimony generally given by an expert witness. *See* W.R.E. 701, 702. Agent Bisceglia was not formally offered or accepted as an expert. During the instruction conference, however, the prosecutor offered an instruction designating Agent Bisceglia as an expert, defense counsel did not object, and the district court accepted the instruction. We will overlook this incongruity because it was not an issue at trial and is not an issue raised on appeal.

victions by presenting evidence of guilt, rather than by arousing the passions and prejudices of jurors against societal evils." *Strange v. State,* 2008 WY 132, ¶ 6, 195 P.3d 1041, 1043–44 (Wyo.2008); *see also Evenson,* ¶ 22, 177 P.3d at 826–27; *Burton v. State,* 2002 WY 71, ¶ 15, 46 P.3d 309, 314 (Wyo. 2002). One example of an improper community outrage argument comes from *Gayler v. State,* 957 P.2d 855, 860–61 (Wyo.1998):

> Drugs, Ladies and Gentleman, is there a more insidious or terrible disease that affects our society today? It tears families apart; steals away our youth. It's ripping the seams of our nation. Costs the taxpayers millions of dollars....
>
> Ladies and Gentleman, Lincoln County Law Enforcement is taking the war on drugs dead serious. They are not going to tolerate the delivery of methamphetamine or any drugs in this county. It doesn't matter if it's a small amount, like what we had here, or a large amount. We are not going to tolerate it. Absolutely not.... This is your opportunity, as a jury, to take a stand with Lincoln County Law Enforcement and say that we will not tolerate drug dealers in our county. We will not tolerate it.

We provided this explanation of why that argument was improper:

> The prosecutor's argument was obviously an appeal to the jury's sense of duty to help local law enforcement by convicting ·Gayler. The argument was improper because it appealed to the jury's passion and prejudice against drug-related crimes. Although a prosecutor is permitted a certain degree of latitude during closing arguments, he is not allowed to urge the jury to convict an accused on any basis other than that the evidence shows guilt beyond a reasonable doubt.

*Id.* at 861.

[¶ 24] It seems apparent that the prosecutor's comments in Mr. Hernandez's case were similar in nature to those in *Gayler.* They urged the jurors to "take care of" Mr. Hernandez to help reduce the methamphetamine problem. They appealed to the jury's passions and prejudice against illegal drugs. They asked the jury to convict Mr. Hernan-

dez "because methamphetamine is so bad, so prevalent here in Rawlins," not because of the evidence against him.

[¶ 25] We must also evaluate these comments in the context of the entire argument, and with reference to the entire record. *Arevalo v. State,* 939 P.2d 228, 230 (Wyo. 1997). It may be that the prosecutor's comments were not as lengthy or impassioned as those in *Gayler.* They were not made as a separate argument, but fitted into an effort to rehabilitate Mr. Moxley's testimony. These characteristics render the prosecutor's comments in Mr. Hernandez's case less blatantly objectionable, but do not neutralize their improper nature. It may also be that the community outrage theme did not permeate Mr. Hernandez's trial as it did the trial in *Strange.* There, we observed that "The type of community outrage or community protection theme that we disapproved in *Gayler* [was] rampant," having found it reflected in a pretrial conference, *voir dire,* the opening statement, the testimony of five witnesses, and the closing argument. *Strange,* ¶ 9, 195 P.3d at 1047. Still, the comments in Mr. Hernandez's case were not entirely isolated. They echoed the prosecutor's opening statement promising evidence that Mr. Hernandez would sell methamphetamine to Mr. Moxley, who "would then sell it throughout this community." They re-emphasized Agent Bisceglia's testimony that "Methamphetamine is a major problem" in Carbon County. Considered in context, the prosecutor's comments remain improper community outrage or protection arguments, and they transgressed a clear and unequivocal rule of law.

[¶ 26] Mr. Hernandez's argument falters, however, on the third prong of our plain error analysis. Based on a fair reading of this record, we are unable to say that the prosecutor's comments materially prejudiced Mr. Hernandez. Under the plain error standard, prejudice is found "if there is a reasonable probability that the verdict would have been more favorable to the appellant if the error had not occurred." *Evenson,* ¶ 7, 177 P.3d at 823. The evidence against Mr. Hernandez was overwhelming.

There is no reasonable probability that the prosecutor's improper comments changed the jury's verdict.

[¶ 27] As to the charges of being in possession of methamphetamine and cocaine, Mr. Hernandez's only defense argument was that the prosecution failed to prove that the illegal drugs belonged to him. The evidence showed that, when Mr. Hernandez was arrested, the officers found methamphetamine and cocaine in a backpack that he admitted was his, along with documents that he admitted were his, inside of his car, which he had just been driving. There is no reasonable probability the jury's verdict on the possession charges would have been different if the prosecutor had not made the improper comments.

[¶ 28] As to the charges of being in possession with intent to deliver, Mr. Hernandez's only defense was that Mr. Moxley was not a credible witness. But even ignoring Mr. Moxley's testimony, the evidence showed that Mr. Hernandez was in possession of relatively large amounts of methamphetamine and cocaine, a digital scale, several razor blades, packaging materials, and several hundred dollars in cash. Agent Bisceglia testified that these facts were more indicative of a person distributing drugs than of a person merely using them. There is no reasonable probability that the jury's verdict on the possession with intent to deliver charges would have been different if the prosecutor had not made the improper comments.

### c. Cumulative Error

[¶ 29] Finally, we turn to Mr. Hernandez's claim that the irrelevant evidence and the prosecutor's inappropriate comments combined to deny him a fair trial. The purpose of evaluating for cumulative error is "to address whether the cumulative effect of two or more individually harmless errors has the potential to prejudice the defendant to the same extent as a single reversible error." *McClelland v. State*, 2007 WY 57, ¶ 27, 155 P.3d 1013, 1022 (Wyo.2007). In conducting a cumulative error evaluation, we consider only matters that we have determined to be errors. *Id.* We will reverse a conviction only when " 'the accumulated effect [of the errors] constitutes prejudice and the conduct of the trial is other than fair and impartial.' " *Id.* (quoting *Alcala v. State*, 487 P.2d 448, 462 (Wyo.1971)). *Guy*, ¶ 45, 184 P.3d at 701. We have agreed with Mr. Hernandez that the prosecutor made improper remarks in closing argument, but concluded that the error was not prejudicial. We have rejected Mr. Hernandez's claim that the district court erroneously allowed irrelevant evidence to be admitted at trial. Because there was no error in the admission of evidence, there is nothing to change our conclusion that the prosecutor's improper remarks were not prejudicial. There is no basis for reversing Mr. Hernandez's convictions due to cumulative error.

[¶ 30] We affirm.

VOIGT, Chief Justice, dissenting.

[¶ 31] I respectfully dissent. I would reverse because the State's community safety argument in this case is virtually indistinguishable from the State's community safety argument that we found reversible in *Strange v. State*, 2008 WY 132, ¶¶ 6–9, 195 P.3d 1041, 1043–47 (Wyo.2008). After introducing evidence of rampant methamphetamine abuse within the community, the State argued in closing that:

.... [Mr. Moxley] contributed to the problem that Special Agent Bisceglia told you was all over the place in this town. But we have taken care of Mr. Moxley. He's been in jail. He told you that.

And now we got [sic] to take care of somebody else, because methamphetamine is so bad, so prevalent here in Rawlins....

That is nothing more nor less than a plea to the jury to convict the appellant because of a community methamphetamine problem, rather than a plea to convict him because he is guilty of the particular crime charged. Such a clear violation of our rule of law cannot be saved because of its context—that being the attempt to give Mr. Moxley some credibility—because it was not necessary in that context and it added nothing to the context.