# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 150

OCTOBER TERM, A.D. 2020

December 16, 2020

FERNANDO GUTIERREZ,

Appellant
(Defendant),

v.

S-20-0084

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Uinta County*
*The Honorable Joseph B. Bluemel, Judge*

*Representing Appellant:*
> *Office of the State Public Defender:  Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel.  Argument by Mr. Morgan.*

*Representing Appellee:*
> *Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Darrell D. Jackson, Director, and Ciara Slife, Student Director, Prosecution Assistance Program, University of Wyoming, College of Law.  Argument by Ms. Slife.*

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*FOX, J., delivers the opinion of the Court; KAUTZ, J., files a specially concurring opinion.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Justice.**

[¶1]   A jury convicted Fernando Gutierrez of conspiracy to deliver a controlled substance and delivery of a controlled substance.  He argues the State's introduction of unnoticed 404(b) evidence and irrelevant evidence about his citizenship denied him his right to a fair trial.  We affirm.

## *ISSUES*

> I.    Was the admission of unnoticed 404(b) evidence prejudicial?
>
> II.   Did the admission of irrelevant evidence about Mr. Gutierrez's citizenship status prejudice him?

## *FACTS*

[¶2]   The Wyoming Division of Criminal Investigation (DCI) conducted a controlled buy of methamphetamine in Evanston, Wyoming.  A confidential informant (CI) working with DCI approached Brandon Marise to purchase the methamphetamine.  Mr. Marise contacted his source, Sergio Gomez, and called the CI when the drugs were on the way to his home.  The CI waited at Mr. Marise's house while Agent Mathson with DCI watched the outside of the residence through binoculars and listened to the buy through a wire worn by the CI.  Agent Mathson observed a dark-colored BMW drive up to the house. The driver exited the car, entered the house, and left a short time later.  Agent Mathson determined the car was registered to Fernando Gutierrez.  Agent Mathson then met with the CI at the rendezvous point where he received a baggie containing a substance later determined to be methamphetamine.

[¶3]   The State charged Mr. Gutierrez with one count each of conspiracy to deliver a controlled substance and delivery of a controlled substance.  Prior to trial, the district court entered its scheduling and discovery order which required the State to provide Mr. Gutierrez with notice of any W.R.E. 404(b) evidence it intended to use at trial.  The State did not notice any intent to use 404(b) evidence, therefore the court did not conduct a *Gleason* hearing.  At trial, Agent Mathson identified Mr. Gutierrez as the person he saw entering the house.  He testified that he was able to identify Mr. Gutierrez because he looked up his name in a local law enforcement database.  The State later elicited answers from Agent Mathson about Mr. Gutierrez's citizenship status.  Mr. Marise and Mr. Gomez each testified for the State and identified Mr. Gutierrez as the person who delivered the methamphetamine.  The jury convicted Mr. Gutierrez of each count.

1

[¶4]    Wyoming law requires the State to give notice, when requested, of its intent to introduce W.R.E. 404(b) evidence, which triggers a pretrial *Gleason* hearing. *Blanchard v. State*, 2020 WY 97, ¶ 18, 468 P.3d 685, 691 (Wyo. 2020) (referencing *Gleason v. State*, 2002 WY 161, ¶ 30, 57 P.3d 332, 343 (Wyo. 2002)). This process enables the district court to ensure that "the defendant in a criminal case [is not] convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged." *Blanchard*, 2020 WY 97, ¶ 18, 468 P.3d at 691 (quoting *Vinson v. State*, 2020 WY 93, ¶ 17, 467 P.3d 1009, 1012 (Wyo. 2020)). The notice requirement and *Gleason* hearing procedure permit review of the district court's evidentiary ruling for an abuse of discretion. The parties assert this Court should apply plain error review because Mr. Gutierrez did not file a pretrial demand for notice and did not object at trial. However, early in the case, the district court entered its scheduling and discovery order which required the State to provide notice of its intent to introduce 404(b) evidence. The district court's clear notice requirement shifts the burden to the State in the same way Mr. Gutierrez's pretrial demand would. However, because the State did not provide notice to Mr. Gutierrez of its intent to introduce 404(b) evidence, our decision turns on whether the admission was prejudicial. *Broberg v. State*, 2018 WY 113, ¶ 19, 428 P.3d 167, 172 (Wyo. 2018). "Error is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made." *Vinson*, 2020 WY 93, ¶ 24, 467 P.3d at 1014 (quoting *Broberg*, 2018 WY 113, ¶ 19, 428 P.3d at 172). "Prejudicial error requires reversal, while harmless error does not." *Vinson*, 2020 WY 93, ¶ 24, 467 P.3d at 1014.

[¶5]    We review Mr. Gutierrez's claim that the district court admitted irrelevant evidence for plain error, because he did not object to the evidence at trial. *Grater v. State*, 2020 WY 102, ¶ 7, 468 P.3d 1116, 1118 (Wyo. 2020). Under plain error, an appellant must prove: "1) the record clearly reflects the incident urged as error; 2) a violation of a clear and unequivocal rule of law; and 3) that he was materially prejudiced" by the alleged error. *Bogard v. State*, 2019 WY 96, ¶ 21, 449 P.3d 315, 321 (Wyo. 2019). Material prejudice exists when the appellant demonstrates a reasonable probability that the jury verdict would have been more favorable in the absence of the error. *Larkins v. State*, 2018 WY 122, ¶ 94, 429 P.3d 28, 49-50 (Wyo. 2018).

## I.    The district court's admission of unnoticed 404(b) evidence was not prejudicial

[¶6]    At trial, Agent Mathson testified that he identified Mr. Gutierrez by running the license plate when he observed the BMW pull up to Mr. Marise's house. The prosecutor then asked Agent Mathson: "And from that did you take any further action?" Agent Mathson responded: "Yes, I looked that name up in our local law enforcement database and was able to get a photograph of Mr. Gutierrez which was the same person that I had observed walking from that BMW into Mr. Marise's residence and leaving shortly

thereafter." Mr. Gutierrez argues that Agent Mathson's statement that he obtained a photograph of him from a local law enforcement database introduced facts through which the jury could infer he had a prior criminal history. The State asserts that it did not violate the notice rule because it did not intend to introduce the statement as 404(b) evidence, or because the statement does not constitute 404(b) evidence.

[¶7] We need not decide whether Agent Mathson's statement constitutes 404(b) evidence requiring the State to provide pretrial notice because, even if it does, there is no prejudice. Agent Mathson made a single statement that he looked up Mr. Gutierrez's photo in a "local law enforcement database." It is speculation to conclude that Mr. Gutierrez's photo in a law enforcement database is evidence of a prior bad act. Further, on rebuttal, Mr. Gutierrez's attorney followed up on the statement and asked Agent Mathson:

> Q. Now when you checked the registration of the BMW
> . . . you ran a criminal history on Fernando [Gutierrez]?
> A. Yes.
> Q. Has he ever been convicted of any felonies?
> A. No.
> Q. Had he ever been convicted of any misdemeanors
> other than minor traffic offenses?
> A. Not that I could find.

Even if the State's initial question may have invited the jury to infer Mr. Gutierrez had a prior criminal history, this exchange eliminated the potential for prejudice because it affirmatively stated that he had no convictions. The admission of evidence that Agent Mathson identified Mr. Gutierrez through a local law enforcement database is not prejudicial.

## II.	*The admission of irrelevant evidence concerning his citizenship did not prejudice Mr. Gutierrez*

[¶8] Mr. Gutierrez argues that the State's inquiry into his citizenship status was irrelevant and materially prejudiced him. On re-direct, the State asked Agent Mathson:

> Q. Did you run any other type of record related to
> immigration or other matters?
> A. I don't have the ability to run immigration records or –
> I just conducted a criminal history check and the registration
> inquiry, driver's license inquiries.
> Q. Do you have an understanding from that information
> as to the citizenship of Mr. Gutierrez?
> A. I believe he is a U.S. citizen.

The first step of the plain error test is met because the alleged error clearly appears in the record. *Grater*, 2020 WY 102, ¶ 7, 468 P.3d at 1118.

[¶9]   The second step of the plain error analysis requires us to determine whether the admission of the testimony violated a clear and unequivocal rule of law. *Id.* The Wyoming Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. Irrelevant evidence is inadmissible. W.R.E. 402. The State argues the testimony does not violate a clear and unequivocal rule of law because, while the Wyoming Rules of Evidence offer a clear rule, relevancy is too general to satisfy the requirement. It suggests that, because the Court must analyze whether the proffered testimony was relevant in each case, the rule of law is not unequivocal. The State supports its argument with a cite to *Schmuck v. State*, 2017 WY 140, ¶ 34 n.8, 406 P.3d 286, 298 n.8 (Wyo. 2017), where we discuss *Vaught v. State*, 2016 WY 7, 366 P.3d 512 (Wyo. 2016). But the referenced discussion in *Schmuck* and *Vaught* had to do with *when* the law was clearly established (at the time jury instructions were given to the jury or at the time of appeal), and has little bearing on the issue before us – the specificity required for a rule to be considered clearly established law. *Schmuck*, 2017 WY 140, ¶ 34 n.8, 406 P.3d at 298 n.8. In fact, this Court has previously applied plain error review to allegedly irrelevant evidence.

[¶10] In *Hernandez v. State*, we applied the plain error standard to several allegedly irrelevant statements. 2010 WY 33, ¶¶ 14-21, 227 P.3d 315, 320-22 (Wyo. 2010). Mr. Hernandez argued that the special agent's testimony that methamphetamine was a major problem in Carbon County was irrelevant and highly prejudicial. We concluded that "[i]n isolation, this testimony seems irrelevant . . . [but] [i]n context, it is less clearly so" because it established the special agent's level of experience with drug distributors and users. *Id*. at ¶ 20, 227 P.3d at 321. In *Foster v. State*, Ms. Foster argued that testimonial evidence of a minor witness's drug use was irrelevant. 2010 WY 8, ¶ 19, 224 P.3d 1, 8 (Wyo. 2010). We reviewed the admission of the challenged testimony for plain error and found that there was no violation of a clear rule of law because, under the facts of the case, the information was relevant to bolster the witness's credibility. *Id.* at ¶ 21, 224 P.3d at 9. The fact that some analysis of the context is required to determine relevancy does not defeat a finding that there was a clear and unequivocal rule of law. Nor is it different from other cases where we must look at the context of a statement to determine if it was plain error. *E.g.*, *Hartley v. State*, 2020 WY 40, 460 P.3d 716 (Wyo. 2020) (under plain error standard, whether prosecutor's statements impermissibly commented on the defendant's right to remain silent or constituted improper opinion argument); *Sorensen v. State*, 2019 WY 80, 444 P.3d 1283 (Wyo. 2019) (whether the district court's comment about evidence presented during trial constituted plain error). Our application of plain error review in this case should not be construed, as the

4

concurring opinion suggests, to stand for the proposition that any violation of the Wyoming Rules of Evidence is a violation of a clear and unequivocal rule of law. It stands for the proposition that this rule, in the context of these facts, is a clear and unequivocal rule of law. We therefore turn to an examination of the challenged evidence to determine whether its admission violates a clear and unequivocal rule of law.

[¶11] "Generally speaking, '[t]he test of relevancy is one of reasonableness and common sense, liberally applied to favor admissibility rather than the exclusion of evidence.'" *Foster*, 2010 WY 8, ¶ 20, 224 P.3d at 8. "[W]e have upheld the admission of evidence as relevant even in situations when it does not directly 'prove or disprove an element of any crime charged.'" *Id*. (quoting *Trusky v. State*, 7 P.3d 5, 12 (Wyo. 2000) (upholding the admission of evidence unrelated to an element of a crime charged because it was relevant to the veracity of the witness's testimony)).

[¶12] The State charged Mr. Gutierrez with conspiracy to deliver a controlled substance and delivery of a controlled substance. Citizenship is not an element of either crime. Wyo. Stat. Ann. §§ 35-7-1042, 35-7-1031(a)(i), 35-7-1016(a) & (d)(ii), 7-13-1616 (LexisNexis 2017). Nor does citizenship tend to make any fact of consequence more or less probable. While it is not necessary for evidence to directly support or disprove an element of the crime, it must be related to the facts of consequence in the case. The State does not contend that Mr. Gutierrez's citizenship makes any fact of consequence more or less probable, nor that it puts any facts or testimony into context. *See Hernandez*, 2010 WY 33, ¶ 20, 227 P.3d at 321.

[¶13] The only "context" the State contends makes the questions about citizenship relevant are the voir dire questions Mr. Gutierrez's attorney asked about bias against people who speak Spanish. However, the purpose of voir dire is to select "a panel of jurors who will fairly and impartially hear the evidence and render a just verdict." W.R.Cr.P. 24(c)(1); *Carothers v. State*, 2008 WY 58, ¶ 4, 185 P.3d 1, 4 (Wyo. 2008). Mr. Gutierrez required translators for his trial, and his attorney asked about potential prejudice against people who live in the United States but do not speak English:

> [Defense attorney]: Speaking of our preconceived notions, let me move on to something else. You notice that we've got interpreters here for [Mr. Gutierrez] and does anybody have the opinion that "Hey, why are we doing this? They even ask us if we can speak English." Does anybody think English ought to be the only official language of the United States?

[¶14] The voir dire questioning was not evidence of any fact relevant to the case, it was directed to the appropriate jury-selection issue of bias. It did not somehow "open the door" for the State to bring in irrelevant evidence of Mr. Gutierrez's citizenship. The State had the burden of proving he was guilty of two drug-related crimes. Evidence of

5

his citizenship did not tend to prove or disprove any fact of consequence. *Foster*, 2010 WY 8, ¶ 20, 224 P.3d at 8; *see also Evenson v. State*, 2008 WY 24, ¶ 29, 177 P.3d 819, 828 (Wyo. 2008) (rehabilitation evidence about injuries that were not relevant to the crime charged should not have been admitted). The evidence of Mr. Gutierrez's citizenship in the context of this case was so clearly irrelevant that the prosecutor knew or should have known that it was evidentiary error.

[¶15] Under the third prong of the plain error analysis, it is difficult to find prejudice when the witness testified he believed Mr. Gutierrez was a United States citizen. Nevertheless, Mr. Gutierrez argues he was materially prejudiced because there is a bias against people living in America who do not learn English, and the prosecutor's questions encouraged the jury to convict based on implicit bias rather than the facts. During voir dire, three jurors indicated their disapproval of people living in the United States who do not speak English. While none of the prospective jurors who expressed this bias served on the jury, Mr. Gutierrez argues that the prevalence of the bias is shown by the number of people on the venire who responded to the defense attorney's question.

[¶16] In *State v. Berhe*, a juror came forward after conviction and indicated she wanted to vote "not-guilty," but her concerns were dismissed by the other jurors because she was the only juror of the same race as the defendant. 444 P.3d 1172, 1176 (Wash. 2019). The Washington Supreme Court held that trial courts must craft a careful and specific inquiry into allegations that implicit bias influenced a jury verdict. *Id*. at 1183. Unlike in *Berhe*, the record in this case presents no indication that implicit bias played a role in the jury's verdict. Mr. Gutierrez instead argues he was materially prejudiced because implicit bias exists and was exacerbated by the prosecutor's irrelevant question about his immigration status. That is not enough.

[¶17] Mr. Gutierrez's attorney addressed the potential for implicit bias during voir dire when a juror responded that he did not think taxpayers should pay for translators:

> [Defense attorney]: I appreciate, I appreciate your answer, I just want to find the extent of it. . . . Again, that's what we're after. We've all got things that might affect our decision-making process beyond what the actual facts of the case are.

His questioning effectively revealed three jurors on the venire who were potentially biased against Mr. Gutierrez and, as a result, they were not selected for the final jury panel. Mr. Gutierrez has not identified anything to suggest that the remaining jurors held a similar bias, implicit or otherwise, or that the verdict would have been different had the prosecutor not asked about his citizenship.

## CONCLUSION

[¶18] The district court's admission of Agent Mathson's unnoticed 404(b) testimony was not prejudicial error. Likewise, the prosecutor's irrelevant questions about Mr. Gutierrez's citizenship did not demonstrate material prejudice. We affirm.

**KAUTZ, J.,** specially concurring.

[¶19]   I concur in the result because the question about citizenship could not have had any negative effect on Mr. Gutierrez.  As the question was harmless, it is unnecessary and dicta for the majority opinion to consider any other aspects of plain error.

[¶20]   The majority opinion holds, for the first time, that admission of irrelevant evidence violates a clear and unequivocal rule of law under the plain error doctrine.  It is true that this Court previously said it applied a plain error analysis to a claim of irrelevant evidence.  But in those cases, no one challenged whether the broad concept of relevance provided a sufficiently "clear and unequivocal rule of law."  Despite the claim otherwise, the logic of the majority's opinion is that admission of any evidence not admissible under the Wyoming Rules of Evidence necessarily is a violation of a clear and unequivocal rule of law.  I disagree.  I believe the majority's approach removes the obligation of the parties to object to evidence and requires trial judges to omnisciently understand all the nuances of a trial and object on behalf of counsel.

[¶21]   Before Wyoming adopted rules addressing "plain error," we permitted some appellate review of issues not raised by objection at trial when those matters approached a "fundamental error."  We said, "the application of the 'plain error' doctrine must be exercised cautiously and only in exceptional circumstances."  *Hays v. State*, 522 P.2d 1004, 1007 (Wyo. 1974).  Further, we recognized plain error "should only be applied where the error would seriously affect the fairness, integrity or public reputation of judicial proceedings."  *Id.*  (citation and quotation marks omitted); *Horn v. State*, 554 P.2d 1141, 1143 (Wyo. 1976).  Those limitations on the application of plain error still apply, even after adoption of W.R.E. 103(d) and W.R.Cr.P. 52(b).  Nothing about this case approaches a "fundamental error" or constitutes "exceptional circumstances."  We should simply determine the question and answer were not prejudicial, and not address the second element of plain error—whether there was an obvious violation of a clear and unequivocal rule of law.

[¶22]   In 1977, Justice Thomas attempted to provide more specific guidance for the application of plain error, and stated there must exist "a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way."  *Hampton v. State*, 558 P.2d 504, 507-08 (Wyo. 1977).  A plain error review is not, and cannot be, a substitute for objections and trial court rulings based on issues developed by the parties.  General, broad concepts of relevance or admissibility do not lend themselves to a finding that a rule was "obviously" transgressed.  Rather, objections provide specific matters for the trial court to address, and likewise plain error may exist when a very specific, obvious, and immediate rule applies.

[¶23]   Whether a particular item of evidence is relevant depends on the unique facts of a case.  It could be relevant at the time the question is asked, or it could become relevant

8

later based on other evidence or argument. The concept of plain error is met when a rule clearly and unquestionably applies to the situation, not when application of a rule is fluid or dependent on many other factors. I believe proper application of plain error to the issue in this case requires a determination of whether there is a clear and unequivocal rule of law that in this specific circumstance a question about the defendant's citizenship could never become relevant. The majority does not identify any such rule and I know of none.

[¶24] Although it claims otherwise, the majority's approach logically applies to any evidence ultimately deemed inadmissible under the Wyoming Rules of Evidence, including hearsay and improper character evidence. By finding a clear and unequivocal rule of law in the broad category of relevant evidence (and logically all categories of inadmissible evidence), the majority opinion relieves parties of any obligation to object, and gives incentive not to object. An objection would alert the other side to potential problems with the evidence, and would permit correction of those problems (exactly what the rules anticipate). By this opinion, the majority motivates counsel to withhold objections and then claim plain error on appeal.

[¶25] The majority claims W.R.E. 402 is a clear and unequivocal rule of law which supports plain error review only "in the context of these facts." This claim suggests that without "these facts" W.R.E. 402 may not constitute a clear and unequivocal rule of law. The majority does not explain how the facts of this case make W.R.E. 402 more amenable to review under plain error, or why in other circumstances W.R.E. 402 would not be, in the majority's opinion, a clear and unequivocal rule of law. In essence, the majority simply claims that, in its opinion, this evidence was sufficiently irrelevant to obviously violate a clear and unequivocal rule of law. This decision requires trial judges to omnisciently know what this court will believe, after the fact, is a sufficient violation of a clear and unequivocal rule of law based on the peculiar facts of the case. There is no logic or precedent from which a trial judge or an attorney can determine when that might occur. Logically, if W.R.E. 402 supports a finding of plain error under the facts of this case, it and all rules of evidence will support a finding of plain error in every case.

[¶26] The majority's approach puts trial judges in the impossible position of anticipating whether certain evidence may or may not be relevant, hearsay, or improper character evidence in the context of the entire trial. "Under the plain error standard of review, we reverse a trial court's decision only if it is so plainly erroneous that the judge should have noticed and corrected the mistake even though the parties failed to raise the issue." *Hernandez v. State*, 2010 WY 33, ¶ 21, 227 P.3d 315, 322 (Wyo. 2010). If an objection had been made, the district court could have exercised its discretion in deciding if it was relevant or irrelevant. But defense counsel did not object, which may have been a sound strategic decision.

[¶27] Appellant could have claimed his counsel was ineffective for failing to object. He did not. Perhaps counsel had good tactical reasons not to object. Instead, Appellant claims the trial judge should have instantaneously recognized this question called for information which could never be relevant, and should have interrupted the trial to prevent it. By finding there was a violation of a clear and unequivocal rule of law here, the majority has agreed. I do not.