# IN THE SUPREME COURT, STATE OF WYOMING

## 2023 WY 80

APRIL TERM, A.D. 2023

August 15, 2023

LEON VAN BUREN FREER,

Appellant
(Defendant),

v.                                                    S-22-0267

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Converse County*
*The Honorable F. Scott Peasley, Judge*

*Representing Appellant:*
        Office of the State Public Defender: Diane Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel.  Argument by Mr. Morgan.

*Representing Appellee:*
        Bridget L. Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; John J. Woykovsky, Senior Assistant Attorney General.  Argument by Mr. Woykovsky.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]    After a jury trial, Leon Van Buren Freer was convicted on twenty-one counts related to sexual abuse against his daughter AF.  Mr. Freer challenges his convictions, arguing the district court abused its discretion when it admitted a sexually explicit photograph of Mrs. Freer (AF's mother) and a pornographic father–daughter incest video under W.R.E. 404(b).  Mr. Freer also argues the prosecutor committed prosecutorial misconduct by eliciting testimony from AF and Mrs. Freer about uncharged bad acts in violation of the district court's W.R.E. 404(b) order, which deprived him of a fair trial.  We affirm.

### ISSUES

[¶2]    We rephrase the issues as:

1. Whether the district court abused its discretion by admitting a sexually explicit photograph of Mrs. Freer and a pornographic father–daughter incest video under W.R.E. 404(b).

2. Whether the prosecutor committed prosecutorial misconduct by eliciting W.R.E. 404(b) testimony from AF and Mrs. Freer resulting in prejudicial error.

### FACTS

[¶3]    AF was born in 2006 and lived with her parents and two brothers.  In March 2021, AF reported to the Department of Family Services (DFS) that Mr. Freer had sexually abused her.  Lieutenant Benjamin Peech from the Converse County Sheriff's Office investigated the report, interviewed AF, Mr. Freer, and Mrs. Freer, and eventually seized several items from Mr. Freer, including a cell phone and various other electronic devices.

[¶4]    In its fifth and final amended information, the State charged Mr. Freer with twenty-seven counts including sexual abuse of a minor, sexual exploitation of a child, manufacturing child pornography, and voyeurism.

[¶5]    Mr. Freer filed a demand for written notice of the State's intent to use W.R.E. 404(b) evidence.  The State filed two 404(b) notices prior to trial.  It first sought to introduce evidence that Mr. Freer's cell phone contained adult, age-difficult,[1] and incest pornography, and a log of six specific internet searches from the time of the charged offenses.  In the same notice, the State sought to introduce evidence of DFS' involvement with the family, which included information on DFS' prior contacts and AF's home

---

[1] Detective Peech testified age-difficult pornography is when the subject in the photograph appears extremely young, but their age cannot be positively identified.

1

environment. The State also provided notice the charged crimes represented only a portion of the sexual abuse against AF. Because the total number of instances of abuse allegedly ranged between 100 and 230, the State explained that AF's testimony may contain statements related to uncharged misconduct. In the second notice, the State sought to introduce sexually explicit photographs Mr. Freer took with Mrs. Freer in 2012, images of Mr. Freer's penis, and instances of Mr. Freer masturbating using the same devices he was alleged to have shown to AF. Mr. Freer sought to exclude the State's 404(b) evidence.

[¶6]    The district court held a hearing to address the parties' 404(b) contentions. The court issued a written order several days later. In the order, the court performed a full *Gleason* analysis and determined the evidence related to adult pornography and some internet searches would be excluded. It also held some of Mr. Freer's internet searches, the age-difficult and incest pornography found on Mr. Freer's phone, the sexually explicit photographs and videos of Mr. Freer and Mrs. Freer, and the evidence concerning DFS' investigation could be introduced at trial, subject to other evidentiary objections. The court reserved ruling on any other evidence the State had of Mr. Freer's uncharged bad acts against AF and stated "no such evidence shall be introduced without the court's prior permission."

[¶7]    The district court held a four-day jury trial in May 2022. The State first called AF. She testified Mr. Freer created the rules in the home and handed out the punishments. His punishments included various forms of physical and mental abuse. Mr. Freer treated her two brothers differently and regularly referred to her using a variety of profane language. She then testified in detail to repeated instances of sexual abuse between 2019 and 2021, which included breast fondling, digital penetration, and other sexual acts. She testified in one instance Mr. Freer had her remove her shirt and proceeded to lift her breast while supposedly measuring her for a bra. She also described an instance where Mr. Freer was fondling and dry humping her when Mrs. Freer came home from work and saw them. She further testified that at one point she asked Mr. Freer if she was still a virgin, he affirmed, proceeded to spread her labia open with his fingers, took a picture, and showed it to her.

[¶8]    The State elicited testimony from six other witnesses, including Detective Peech who testified about his investigation and extracting images and videos from Mr. Freer's electronic devices. Mrs. Freer testified about the punishments Mr. Freer imposed on AF, witnessing Mr. Freer's hands on AF's breasts when he was measuring her for a bra, and witnessing Mr. Freer on top of AF between her legs. The State also admitted several exhibits including photographs Mr. Freer took of AF's vagina, a similar sexually explicit photograph of Mrs. Freer, and a video depicting father–daughter incest pornography. After it rested, the State moved to dismiss six counts. The defense called Mr. Freer's mother and Mr. Freer. The State recalled Detective Peech in rebuttal. Additional trial facts are discussed below where necessary to our legal analysis.

2

[¶9]   The jury returned a guilty verdict on the remaining twenty-one counts.  The district court sentenced Mr. Freer to three consecutive sets of concurrent prison terms totaling 20 to 30 years on seven counts of sexual abuse of a minor in the first degree; 10 to 15 years on ten counts of sexual abuse of a minor in the second degree; and 6 to 10 years on one count of sexual abuse of a minor in the third degree, two counts of sexual exploitation of a child, and one count of voyeurism.[2]

[¶10]  Mr. Freer timely appealed.

## *DISCUSSION*

### *I.       The district court did not abuse its discretion when it admitted a sexually explicit photograph of Mrs. Freer and a pornographic father–daughter incest video under W.R.E. 404(b).*

[¶11] Mr. Freer filed a demand for written notice of the State's intent to use 404(b) evidence.  We treat such a demand as an objection and therefore review the district court's admission of 404(b) evidence for an abuse of discretion.  *Anderson v. State*, 2022 WY 119, ¶ 11, 517 P.3d 583, 588 (Wyo. 2022) (citing *Barrett v. State*, 2022 WY 64, ¶ 41, 509 P.3d 940, 948 (Wyo. 2022)).  "Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of foundation and relevancy, competency, materiality, and remoteness of the evidence." *Id.* (quoting *Klingbeil v. State*, 2021 WY 89, ¶ 32, 492 P.3d 279, 286 (Wyo. 2021)).  "We will not disturb the trial court's determination of the admissibility of evidence unless the court clearly abused its discretion. We need only determine whether the court could have reasonably concluded as it did." *Id.* (citations omitted).  Mr. Freer has the burden to show an abuse of discretion.  *Id.* ¶ 15, 517 P.3d at 589 (citation omitted).

[¶12]  W.R.E. 404(b) states:

> Other crimes, wrongs, or acts.  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good

---

[2] The sentence for voyeurism was 2 to 4 years, to run concurrent with the sentences for one count of sexual abuse of a minor and two counts of sexual exploitation of a child.

3

cause shown, of the general nature of any such evidence it intends to introduce at trial.

[¶13]  We have stated "[a] core principle of Wyoming Rule of Evidence 404(b) is that the defendant in a criminal case should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged." *Olson v. State*, 2023 WY 11, ¶ 13, 523 P.3d 910, 913–14 (Wyo. 2023) (quoting *Jackson v. State*, 2021 WY 92, ¶ 10, 492 P.3d 911, 915 (Wyo. 2021)).  "To guard against the misuse of W.R.E. 404(b) evidence, also known as uncharged misconduct evidence, we have a well-established and familiar procedure that must be followed if the State wishes to use such evidence at trial." *Id.*

> When a defendant files a pretrial demand for notice of the State's intent to introduce uncharged misconduct evidence, the State must identify the evidence.  The district court then must hold a hearing in which the State offers a relevant and proper purpose for admissibility under Rule 404(b) and explains why the evidence is more probative than unfairly prejudicial.  In that hearing, the district court must then conduct an exacting analysis of the *Gleason* factors:
>
> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the probative value of the evidence must not be substantially outweighed by its potential for unfair prejudice; and (4) upon request, the trial court must instruct the jury that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. [3]

---

[3] Under *Gleason*, the district court considers the following five factors to determine the probative value of the evidence:

> 1. How clear is it that the defendant committed the prior bad act?
>
> 2. Does the defendant dispute the issue on which the state is offering the prior bad acts evidence?
>
> 3. Is other evidence available?
>
> 4. Is the evidence unnecessarily cumulative?
>
> 5. How much time has elapsed between the charged crime and the prior bad act?

*Id.* (quoting *Mitchell v. State*, 2020 WY 142, ¶ 22, 476 P.3d 224, 233 (Wyo. 2020)); *see also Gleason v. State*, 2002 WY 161, ¶ 27, 57 P.3d 332, 342 (Wyo. 2002) (discussing the procedures to admit evidence under W.R.E. 404(b)).

[¶14]   This Court does not apply the *Gleason* analysis anew on appeal. *Barrett*, ¶ 48, 509 P.3d at 950 (citation omitted).  We instead "determine whether the district court abused its discretion in considering the factors."  *Id.* (citation omitted).  "As long as there is a legitimate basis for the district court's decision, we will not disturb it on appeal."  *Id.* (citation omitted); *see also Gleason*, ¶ 30, 57 P.3d at 343 ("While the trial court need not make an express finding on every factor . . . , the record must contain sufficient findings to support the trial court's conclusions.").

[¶15]   Here, the district court carefully followed the procedures for admitting evidence under W.R.E. 404(b).  After the State filed its W.R.E. 404(b) notices, the court held a hearing and later produced a written order thoroughly analyzing the *Gleason* factors for each category of evidence the State sought to introduce.  The court excluded some of the

---

*Barrett*, ¶ 46, 509 P.3d at 950 (quoting *Mayhew v. State*, 2019 WY 38, ¶ 26, 438 P.3d 617, 623 (Wyo. 2019)).  The district court then weighs the following six factors against the probative value of the evidence:

> 1. The reprehensible nature of the prior bad act.  The more reprehensible the act, the more likely the jury will be tempted to punish the defendant for the prior act.
>
> 2. The sympathetic character of the alleged victim of the prior bad act. Again, the jury will be tempted to punish the defendant for the prior act if the victim was especially vulnerable.
>
> 3. The similarity between the charged crime and the prior bad act.  The more similar the acts, the greater is the likelihood that the jury will draw the improper inference that if the defendant did it once, he probably did it again.
>
> 4. The comparative enormity of the charged crime and the prior bad act. When the prior act is a more serious offense than the charged crime, the introduction of that act will tend to place the defendant in a different and unfavorable light.
>
> 5. The comparable relevance of the prior bad act to the proper and forbidden inferences.  Evidence of the prior bad act may be much more probative of bad character than it is of any legitimate inference permitted by Rule 404(b).
>
> 6. Whether the prior act resulted in a conviction.  The jury may be tempted to punish the defendant if they believe he escaped punishment for the prior bad act.

*Id.* (quoting *Mayhew*, ¶ 26, 438 P.3d at 623–24).

State's evidence, found other evidence to be proper for introduction at trial, and reserved its ruling on the remaining W.R.E. 404(b) evidence. Mr. Freer now challenges two of the court's W.R.E. 404(b) rulings admitting certain evidence at trial—a sexually explicit photograph of Mrs. Freer and a pornographic father–daughter incest video. We review the rulings in turn.

### a. The sexually explicit photograph of Mrs. Freer.

[¶16] The State introduced into evidence a 2012 photograph depicting an image of Mr. Freer's fingers spreading Mrs. Freer's labia open and exposing her vagina. The State asserted the sexually explicit photograph demonstrated Mr. Freer's motive and intent because it was similar to a photograph he took of his daughter's genitals. Mr. Freer first contends the photograph fails to show Mr. Freer's motive and intent to have sexual contact with his daughter, citing *Johnson v. State*, 872 P.2d 93, 97 (Wyo. 1994), and thus it was not offered for a proper purpose. This Court explained in *Johnson* the distinction between motive and intent:

> In common usage intent and "motive" are not infrequently regarded as one and the same thing. In law there is a distinction between them. "Motive" is the moving power which impels to action for a definite result. Intent is the purpose to use a particular means to effect such result. "Motive" is that which incites or stimulates a person to do an act.

*Johnson*, 872 P.2d at 97. We have also generally defined motive as "that which leads or tempts the mind to indulge in a particular act." *Anderson*, ¶ 22, 517 P.3d at 590 (quoting *Barrett*, ¶ 49, 509 P.3d at 951). Mr. Freer seems to misunderstand the district court's reason for allowing the picture, which is its similarity to the picture he took of AF. The circumstantial inference is that Mr. Freer intended to take a sexually explicit photograph of his daughter similar to the sexually explicit photograph he took of his wife, which is evidence of Mr. Freer's motive—a sexual interest in his daughter—and his intent to take a photograph to "effect such result." *Johnson*, 872 P.2d at 97. Given this inference, the district court legitimately concluded the photograph was offered for the proper purposes of motive and intent. *Id.*

[¶17] Mr. Freer also argues the photograph, taken in 2012, is too remote to be relevant to his alleged acts in 2019. "We have declined to set an arbitrary time line for the admissibility of Rule 404(b) evidence." *Barrett*, ¶ 57, 509 P.3d at 952 (collecting cases). Rather, the district court has discretion to decide whether other bad acts evidence is too remote to have evidentiary value. *Id.* (citing *Winters v. State*, 2019 WY 76, ¶ 85, 446 P.3d 191, 218 (Wyo. 2019)). "The question is 'one of reasonableness' considering 'the context in which the evidence was introduced and the theory supporting its admissibility.'" *Id.* (quoting *Winters*, ¶ 85, 446 P.3d at 218).

6

[¶18] The district court acknowledged the remoteness of the photograph lessened its probative value but ultimately allowed the photograph to be introduced at trial after analyzing its relevancy and potential for unfair prejudice. Mrs. Freer testified that Mr. Freer had an interest in taking sexual photographs of her for his use. During this point in her testimony, the State introduced the sexually explicit photograph of her genitals. At closing, the State compared that photograph with the similar photograph of AF and discussed Mr. Freer's use of such photographs for sexual arousal. The State thus used the sexually explicit photograph of Mrs. Freer consistent with its theory of intent and motive. *See id.* (quoting *Winters*, ¶ 85, 446 P.3d at 218). The district court reasonably concluded the photograph was relevant and therefore provided a legitimate basis when it admitted the photograph of Mrs. Freer under W.R.E. 404(b). It did not abuse its discretion in doing so. *See Anderson*, ¶ 11, 517 P.3d at 588.

### b. The pornographic father–daughter incest video.

[¶19] The video—which law enforcement extracted from Mr. Freer's phone—shows actors depicted as underage and engaged in an incestuous relationship with an older man who purported to be their father. Mr. Freer concedes the video was offered for the proper purpose of motive and intent and is relevant. He instead argues the video was unfairly prejudicial and cumulative.

[¶20] Mr. Freer relies on the district court's statements at trial to assert the court revisited the admissibility of the incest video and the video's ultimate admission was unfairly prejudicial. During the trial, the State offered and the district court admitted the video into evidence. The State published certain clips from the video to the jury. On the next day of trial, the court determined it would only allow the video to be used as a demonstrative exhibit and stated the idea of the jury watching the video again was an "oversaturation and unduly prejudicial." The district court also acknowledged it had already allowed the State to admit hours of other W.R.E. 404(b) evidence through Detective Peech and considered revisiting its W.R.E. 404(b) order. Despite these statements, and after hearing further arguments from the parties, the district court ultimately concluded it would stand by its reasoning in the W.R.E. 404(b) order. The court kept the entire video in evidence and provided a limiting instruction at Mr. Freer's request.

[¶21] In addition to pointing out the district court's own statements at trial, Mr. Freer seems to ask this Court to reapply the *Gleason* factors in his favor to conclude the father–daughter incest video was unfairly prejudicial. As noted above, we do not perform the *Gleason* analysis "anew on appeal." *Anderson*, ¶ 15, 517 P.3d at 589 (citing *Barrett*, ¶ 48, 509 P.3d at 950). We focus on how the district court analyzed the factors. *Id.* (citation omitted).

[¶22] In its W.R.E. 404(b) order, the district court found "the pornography depicting incestuous relations . . . might enhance the natural development of the facts. Specifically,

7

to show the Defendant's course of conduct in viewing . . . incestuous pornography might help to explain the Defendant's course of conduct with the alleged victim—his daughter." The court further stated:

> Concerning the incestuous pornography, the charged crimes fit this category; the Defendant is the minor's victim's father. This specific type of pornography . . . depicting sexual encounters between adults and juveniles of the same relation, the court finds sheds light on the Defendant's desire to engage in such a relationship and serves as evidence of the Defendant's motive to commit the underlying acts—engaging in sexual intercourse or other sexual behavior with his daughter.

It then found the incest pornography was relevant and not unduly cumulative. The court reasoned that "there is no other evidence available other what is being proffered by the State . . . . [T]he court cannot see that any of this evidence would be cumulative."

[¶23]   The court also noted all the evidence before it had a high chance of unfair prejudice. However, after balancing the *Gleason* factors, the court reasoned the video was not unfairly prejudicial because: the video did not show the victim, it was no more graphic or disturbing than what Mr. Freer was charged with, and Mr. Freer had no convictions based on the video's content or any similar bad acts. The court therefore provided a legitimate basis to admit the incest video under W.R.E. 404(b) and did not abuse its discretion. *See Anderson*, ¶ 11, 517 P.3d at 588.

## II.   Mr. Freer fails to show he was prejudiced by the alleged prosecutorial misconduct.

[¶24]   Mr. Freer did not raise a prosecutorial misconduct objection to the district court. Accordingly, we review for plain error. *King v. State*, 2023 WY 36, ¶ 33, 527 P.3d 1229, 1242 (Wyo. 2023) (citation omitted). To establish plain error, Mr. Freer "must show (1) the record is clear about the incident alleged as error; (2) a violation of a clear and unequivocal rule of law; and (3) he was denied a substantial right resulting in material prejudice." *Id.* (citation omitted). Both parties agree the first prong of the plain error analysis is met. Mr. Freer must therefore show a violation of a clear and unequivocal rule of law and prejudice. *Id.* (citation omitted).

[¶25]   This Court has defined prosecutorial misconduct as "[a] prosecutor's improper or illegal act (or failure to act), esp[ecially] involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment." *Id.* ¶ 16, 527 P.3d at 1238 (citation omitted). Prosecutorial misconduct is more than evidentiary error. *Id.* (quoting *McGinn v. State*, 2015 WY 140, ¶ 50, 361 P.3d 295, 306 (Wyo. 2015) (Fox, J., concurring)). Such claims are intended "to address gross prosecutorial improprieties that

have deprived a criminal defendant of his or her right to a fair trial." *Meece v. State*, 2023 WY 60, ¶ 17, 530 P.3d 597, 600 (Wyo. 2023) (quoting *King*, ¶ 16, 527 P.3d at 1238).

[¶26] Mr. Freer alleges the prosecutor committed misconduct by eliciting testimony from AF and Mrs. Freer regarding uncharged bad acts of physical and mental abuse Mr. Freer imposed on AF, which violated the district court's W.R.E. 404(b) order. In *Bogard*, this Court stated it is "misconduct for a prosecutor to ignore a trial court's W.R.E. 404(b) order and, thus, knowingly bring inadmissible evidence to the jury's attention." *Bogard v. State*, 2019 WY 96, ¶ 51, 449 P.3d 315, 327 (Wyo. 2019) (citing *Wilde v. State*, 2003 WY 93, ¶ 27, 74 P.3d 699, 711 (Wyo. 2003)). Under our plain error standard, Mr. Freer must therefore show the prosecutor clearly and knowingly violated the district court's 404(b) order when he elicited testimony from AF and Mrs. Freer, and that the violation(s) deprived Mr. Freer of a fair trial. *See id.* ¶¶ 21, 51, 84, 449 P.3d at 321, 327, 335–36 (concluding the prosecutor's violations of the district court's 404(b) order, among other misconduct, denied Mr. Bogard his right to a fair trial). It is unclear from the record whether the prosecutor knowingly violated the district court's order. However, the record makes clear that even if the prosecutor crossed the line, his conduct did not deprive Mr. Freer of a fair trial.

[¶27] In its W.R.E. 404(b) order, the district court held, in part:

> (h) Evidence of other uncharged bad acts by the Defendant against the alleged victim will be reserved until the time of trial, **but no such evidence shall be introduced without the court's prior permission**.
>
> (i) For such evidence that is specifically excluded, counsel shall take appropriate steps to ensure witnesses do not testify or infer to such evidence.

(emphasis in original).

[¶28] The State contends the prosecutor did not violate the 404(b) order when he elicited testimony about Mr. Freer's physical and mental abuse of AF because, when read in its entirety, the order only required court permission to introduce uncharged bad acts similar in nature to the charged crimes—i.e., sexual abuse. It is true, the court indicated in the "Facts" and "Discussion" sections of the order that it planned to prohibit the prosecution from introducing W.R.E 404(b) evidence "similar in nature to the charged crimes" without the court's prior permission. Yet, the language of the "Order" broadly stated no "other uncharged bad acts" by Mr. Freer are to be introduced at trial without the court's prior permission.

9

[¶29]   During AF's testimony, in addition to questions about sexual abuse, the prosecutor also inquired about the "roles" her parents played in their family dynamics.  AF testified Mr. Freer "handed out the punishments" because he was the one who created all the rules.  She stated the types of punishments included, "[s]lapping, punching, getting whipped with a belt, getting beaten with a metal broomstick, not bring able to eat, not being able to use the bathroom, being locked outside, having more chores, not being able to sleep, going without water."  She affirmed that Mr. Freer referred to himself as an authority figure in the home by calling himself "king shit."  She also explained that she received 97 percent of the punishments, that Mr. Freer treated her two brothers differently, and that Mr. Freer regularly referred to her using a variety of profane language.

[¶30]   The prosecutor asked Mrs. Freer similar questions.  She testified to the chores she and AF did around the house and that Mr. Freer did not treat the children equally.  She affirmed Mr. Freer was the disciplinarian in the house and stated when AF was in trouble he would "grab her by the hair, throw her to the floor, and he slapped her across the face where there was a handprint.  She had several bruises."  She also testified to the profane language Mr. Freer would regularly use to refer to AF.

[¶31]   Because the State charged Mr. Freer, in part, with first degree sexual abuse of a minor under Wyo. Stat. Ann. § 6-2-314(a)(iii), the prosecutor was required to prove Mr. Freer committed his acts while he "occupie[d] a position of authority in relation to the victim."  The State asserts this testimony related to Mr. Freer's position of authority— evidence seemingly outside the scope of W.R.E. 404(b).  Yet, the State concedes some of the testimony constituted uncharged bad acts under W.R.E. 404(b).[4]  Thus, considering the challenged testimony in the full context of the order's explicit limitations and the nature of the testimony itself in relation to the charged crimes, we are unable to confidently determine whether the prosecutor knowingly violated the order.  We can, however, confidently conclude Mr. Freer cannot show how the alleged prosecutorial misconduct denied him a fair trial.

[¶32]   Whether we review alleged prosecutorial misconduct under harmless error or plain error, we focus on whether the misconduct affected the accused's substantial right to a fair trial.  *Sam v. State*, 2017 WY 98, ¶ 65, 401 P.3d 834, 856 (Wyo. 2017) (quoting *McGinn*, ¶ 13, 361 P.3d at 299); *see also Bogard*, ¶ 18, 449 P.3d at 321 ("[O]ur ultimate focus and attention is on whether the alleged error affected Mr. Bogard's substantial right to a fair trial." (citations omitted)).  Mr. Freer therefore "must show prejudice under 'circumstances which manifest inherent unfairness and injustice or conduct which offends the public sense of fair play.'"[5]  *Klingbeil*, ¶ 43, 492 P.3d at 289 (quoting *McGinn*, ¶ 13, 361 P.3d at 299).

---

[4] Mr. Freer also assumes W.R.E. 404(b) applies to the challenged testimony with minimal explanation.

[5] Mr. Freer argues the burden should be on the State to show harmless error when the prosecutor below directly disobeyed a court order.  In *Leners*, we addressed and rejected the invitation to shift the burden under a plain error analysis.  *Leners v. State*, 2021 WY 67, ¶ 25, 486 P.3d 1013, 1019 (Wyo. 2021).

We review the entire record to analyze whether Mr. Freer was prejudiced. *King*, ¶ 52, 527 P.3d at 1247 (citation omitted). In doing so, we assess the following factors: "1) the severity and pervasiveness of the misconduct; 2) the significance of the misconduct to the central issues in the case; 3) the strength of the State's evidence; 4) the use of cautionary instructions or other curative measures; and 5) the extent to which the defense invited the misconduct." *Id.* ¶ 53, 527 P.3d at 1247 (citation omitted). The strength of the State's case is the most important factor. *Id.*

[¶33]  Assessing the first and second factors against the record in this case, we find the prosecutor's alleged misconduct was neither severe nor pervasive or significant to the central issues in the case. AF only briefly, and generally, addressed the physical and mental abuse Mr. Freer imposed on her before discussing the incidents of sexual abuse at issue in detail. Mrs. Freer likewise only briefly discussed Mr. Freer's physical and mental abuse against AF. Neither the prosecutor nor defense counsel addressed this testimony during closing arguments.

[¶34]  In contrast, and considering the third factor, the State's evidence against Mr. Freer was strong. AF described in detail Mr. Freer's acts as they related to each count of sexual abuse, *supra* ¶ 7.[6]  Mrs. Freer corroborated portions of AF's testimony. She testified to witnessing Mr. Freer's hands on AF's breasts when he was measuring her for a bra and observing Mr. Freer draped over AF while standing between her legs with his hands up by her shoulders and touching their pelvic regions against each other.

[¶35]  The prosecutor also presented testimony from Detective Peech who discussed retrieving multiple search histories, images, and videos from Mr. Freer's phone and computer, which included strikingly similar photographs of AF's and Mrs. Freer's vaginas. Douglas Kelley, a forensic analyst with the Wyoming State Crime Lab, testified to analyzing the finger ridges in the photographs of AF's vagina and identified Mr. Freer's left middle finger as one of the fingers in the photographs. Lastly, Jennifer Brammeier, another forensic analyst, testified to a paternity test which confirmed Mr. Freer as AF's biological father; Officer Keri McNare identified AF's right buttocks in a photograph taken from Mr. Freer's phone; and, Dr. Casey Starks testified to a medical exam he performed on AF and identified her vagina in the photographs taken from Mr. Freer's phone.

[¶36]  Considering the fourth and fifth factors, we note Mr. Freer did not object to the alleged prosecutorial misconduct below and the jury was not specifically instructed about the physical and mental abuse testimony. After carefully considering each factor, we

---

[6] Mr. Freer denied only portions of AF's testimony and offered up various explanations for his conduct. For instance, when his wife found him dry humping AF, Mr. Freer testified he was merely responding to questions AF had asked him about sex and explained it was "purely educational." Mr. Freer admitted taking photographs of AF's vagina. He explained AF felt she had torn something and was feeling pain, asked if she was still a virgin, and he thought he could help her by taking a photograph and showing it to her.

conclude Mr. Freer has failed to demonstrate the alleged prosecutorial misconduct denied him his substantial right to a fair trial.

## *CONCLUSION*

[¶37]  The district court did not abuse its discretion when it admitted the sexually explicit photograph of Mrs. Freer or the pornographic father–daughter incest video under W.R.E. 404(b).  Mr. Freer failed to demonstrate he was prejudiced by the prosecutor's alleged misconduct.

[¶38]  Affirmed.