# IN THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 39

### APRIL TERM, A.D. 2024

### April 4, 2024

WESLEY DE SOUSA SOARES a/k/a
WESLEY SOUSA,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-23-0160

*Appeal from the District Court of Albany County*
*The Honorable Misha E. Westby, Judge*

*Representing Appellant:*
> *Office of the State Public Defender: Diane Lozano, Wyoming State Public Defender; Kirk A. Morgan, Chief Appellate Counsel. Argument by Mr. Morgan.*

*Representing Appellee:*
> *Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General. Argument by Mr. Burton.*

*Before FOX, C.J., and KAUTZ\*, BOOMGAARDEN, GRAY, and FENN, JJ.*

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this matter on March 27, 2024.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]     Wesley de Sousa Soares was charged with four counts of sexual assault in the first degree. A jury convicted him of three. Mr. Sousa's arguments on appeal relate to the trial court's admission into evidence of Exhibits 23 and 24, two compact discs (CDs) that contained audio recordings of telephone calls Mr. Sousa made while in custody. The recordings were mostly in the Portuguese language. We find no reversible error.

### *ISSUES*

[¶2]     Mr. Sousa presents four issues on appeal, which we rephrase and consolidate.

1. Did the district court commit plain error when it admitted the audio exhibits into evidence without an accompanying English transcription?

2. Did the prosecutor commit misconduct during his cross-examination of Mr. Sousa or during his closing argument?

3. Did the district court commit structural error by providing the jury with equipment to listen to the audio exhibits?

### *FACTS*

[¶3]     Wesley de Sousa Soares is a Brazilian national and professional jiu jitsu fighter. Mr. Sousa obtained a United States athlete visa and resided in Denver, Colorado. Mr. Sousa's native language is Portuguese, but he can speak and understand some English.

[¶4]     Mr. Sousa and KB met through an online mobile dating application. After communicating online, the two agreed to meet in person. Mr. Sousa went to KB's residence in Laramie, where KB said he sexually assaulted her multiple times until she escaped. KB went to the hospital, spoke with law enforcement, and completed a Sexual Assault Nurse Examiner (SANE) exam.

[¶5]     Mr. Sousa was arrested in Denver and jailed. The State charged him with four counts of sexual assault in the first degree. Each count was for a separate and specific sexual act KB said he committed against her in her home without her consent. Mr. Sousa claimed KB consented to their entire sexual encounter.

[¶6]     While in custody, Mr. Sousa made phone calls, which were recorded and provided to the investigating detective. The recorded conversations were in Portuguese, and law enforcement had them translated. Both the State and Mr. Sousa designated the recordings

1

as trial exhibits in their pre-trial filings. Neither party designated an English transcript of the audio recordings as an exhibit.

[¶7]    The State also designated the detention center's record custodian to lay foundation for the jail phone call recordings in the detention center's ordinary course of business, and Dorly Piske to testify "regarding translations of jail phone calls [Mr. Sousa] made . . . consistent with her experience and knowledge of the Portuguese language." Defendant's witness list included "[a]ll witnesses summoned by the State."

[¶8]    The case proceeded to trial, where Mr. Sousa was provided with an interpreter. The State called Deputy Louis Pugliese, the Denver Sheriff's Department's custodian of record for recorded phone calls. Deputy Pugliese explained the inmate call recording system. He also testified he provided all jail calls made by Mr. Sousa while in custody at the Denver Sheriff's Department to Albany County law enforcement.

[¶9]    During Deputy Pugliese's testimony, the State introduced two CDs, designated as Exhibits 23 and 24. The exhibits were each labeled "Portion of Defendant's jail phone call from Denver" and contained accurate copies of the telephone calls Mr. Sousa made while in custody. Both exhibits were admitted into evidence without objection from defense counsel. The State did not provide the court or the jury with an English transcript of the recordings, and the recordings were never played in open court for the jury to hear.

[¶10]  The State later called Detective Jeffrey McKinney, who investigated KB's case. He testified he became aware of Mr. Sousa's recorded calls as part of his investigation. He requested the calls from the Denver County Sheriff's Department and had them translated. Neither Deputy Pugliese nor Detective McKinney testified to what was said in these recordings.

[¶11]  Mr. Sousa testified on his own behalf. On cross-examination, the State questioned Mr. Sousa concerning a conversation recorded on the previously admitted audio recordings:

> Q.    Mr. De Sousa, do you recall having a phone conversation with, I believe, a Rafael, in which you stated, I am a walking weapon?
>
> A.    I remember my friend Rafael. And I remember having a conversation with him, but I'm not understanding the question. Are you saying I said I was a weapon?
>
> Q.    That's correct. You stated – so that means, I'm, let's say, a weapon. A walking weapon?

2

A.     I don't remember that detail. But I do know that we have a way of talking about each other, about ourselves in jiu jitsu. And when a person is very good at jiu jitsu, you can say I'm like firing – like an automatic rifle. Or I'm as strong as a .38. My hands are like a weapon.

Q.     So given your explanation, you followed up on that statement and said, let me see if you can reason with me and see if you understand my logic. If I am all that, if I am alone in a house with an unarmed defenseless woman, what could I do with her?

A.     Now I understand.

       I said that in the context of my being a jiu jitsu athlete. And what I said was that if I were alone in a home like that, I could do whatever I wanted to.

[THE STATE]: Your honor, for the record, that's Exhibit 24 through minute mark 3017, 3252.

[¶12]  On redirect, defense counsel asked Mr. Sousa to explain the statements he made.

Q.     The prosecutor asked you about walking weapon.

       Is it your response that what you were talking about is that you could have done some harm to anybody if you wanted to. And that's not what you were doing with [KB]?

       Explain that.

A.     Yes, I would like to explain a little bit more.

Q.     Please.

A.     I will take as much care, be as careful as possible, so that the jurors can understand.

       I'm a professional – I am a professional jiu jitsu athlete.

       I am a champion in many countries oftentimes.

3

And when you have a personality that people are doubting, you find – and then you find yourself inside a bedroom with a woman. Worst things [than] you can imagine –

. . .

When you're in a woman with a – when you're in a room, a bedroom with a woman, you could do worse things than you can even imagine.

Imagine what a man could do with a woman when they're in a bedroom with them if he's a bad person or has a bad personality.

In my situation

[DEFENSE COUNSEL]: -- excuse me, Your honor. I would advise my client to stop right there.

The Court: Okay.

[¶13]   In its closing argument, the State referenced Mr. Sousa's statements.

[THE STATE]: You find yourself in a bedroom with a woman. You could do worse things than you can even imagine. Imagine what a man could do with a woman when they are in a bedroom with them.

[KB] did not have to imagine. She lived it.

. . .

Not only could he do what he wanted, he did what he wanted.

. . .

The Defendant caused submission of [KB] through the actual application of physical force or forcible confinement to which the Defendant reasonably calculated would cause submission of [KB].

4

> Imagine what a man could do with a woman when they are in a bedroom with them.
>
> . . .
>
> No matter what type of weapon he claims himself to be.

[¶14] During jury deliberations, the court sent an email to counsel, which read "The jurors have asked for audio equipment to listen to the CD's. We were not going to treat this as a question and were just going to provide them with the equipment unless there is an objection to that." Both State and defense counsel responded to the email, and neither objected.

[¶15] A few hours later, the parties convened to discuss a jury question. The jury asked the court "Is it possible to get the CD recordings transcribed from Portuguese to English?" The court and the parties agreed the jury should not be provided with a transcription since a transcript had not been admitted into evidence.

[¶16] The jury convicted Mr. Sousa of three counts of sexual assault in the first degree and acquitted him of one. The district court sentenced him to six to eight years on each count to be served concurrently with credit for time served. Mr. Sousa timely appealed.

## DISCUSSION

### I.   The district court did not commit plain error when it admitted the audio exhibits into evidence without an accompanying English transcription.

[¶17] Mr. Sousa contends plain error occurred when the district court admitted Exhibits 23 and 24 because (1) the State offered the exhibits without providing an English transcript and (2) the exhibits were irrelevant and unduly prejudicial. We disagree.

[¶18] Because Mr. Sousa did not object to the admission of the audio exhibits at trial, this Court reviews the issue for plain error. *Gutierrez v. State*, 2020 WY 150, ¶ 5, 477 P.3d 528, 530 (Wyo. 2020) (citing *Grater v. State*, 2020 WY 102, ¶ 7, 468 P.3d 1116, 1118 (Wyo. 2020)); W.R.E. 103(d). "Under plain error, an appellant must prove: '1) the record clearly reflects the incident urged as error; 2) a violation of a clear and unequivocal rule of law; and 3) that he was materially prejudiced' by the alleged error." *Gutierrez*, 2020 WY 150, ¶ 5, 477 P.3d at 530-31 (quoting *Bogard v. State*, 2019 WY 96, ¶ 21, 449 P.3d 315, 321 (Wyo. 2019)). "Failure to establish each element precludes a finding of plain error." *Lott v. State*, 2022 WY 143, ¶ 10, 519 P.3d 646, 649 (Wyo. 2022) (quoting *Klingbeil v. State*, 2021 WY 89, ¶ 40, 492 P.3d 279, 288 (Wyo. 2021)).

[¶19]  "The first step of the plain error test is met because the alleged error clearly appears in the record." *Gutierrez*, 2020 WY 150, ¶ 8, 477 P.3d at 531 (citing *Grater*, 2020 WY 102, ¶ 7, 468 P.3d at 1118). The record is clear the State offered the audio exhibits without an English transcript, and the district court admitted them.

[¶20]  "The second step of the plain error analysis requires us to determine whether the admission of the testimony violated a clear and unequivocal rule of law." *Gutierrez*, 2020 WY 150, ¶ 9, 477 P.3d at 531 (citing *Grater*, 2020 WY 102, ¶ 7, 468 P.3d at 1118). Mr. Sousa argues there is a clear and unequivocal rule of law that all proceedings are to be conducted in English, and where evidence is a recording in a foreign language, the proponent of the evidence must prepare and introduce transcripts into evidence.

[¶21]  "The language of the federal courts is English." *United States v. Morales-Madera*, 352 F.3d 1, 7 (1st Cir. 2003); *United States v. Rivera-Rosario*, 300 F.3d 1, 5-6 (1st Cir. 2002) ("It is clear, to the point of perfect transparency, that federal court proceedings must be conducted in English."). Similarly, some federal courts have addressed foreign language recordings and the use of English transcripts. *See United States v. Mendiola*, 707 F.3d 735, 742 (7th Cir. 2013) ("[I]n cases in which the recording is in a language foreign to the jury, transcripts (along with the proper admonishments about their use) are a 'virtual necessity.'") (citing *United States v. Cruz-Rea*, 626 F.3d 929, 936 (7th Cir. 2010)); *United States v. Ben-Shimon*, 249 F.3d 98, 101 (2d Cir. 2001) ("Where the recorded conversation is conducted in a foreign language, an English language transcript may be submitted to permit the jury to understand and evaluate the evidence.") (citing *United States v. Chalarca*, 95 F.3d 239, 246 (2d Cir. 1996); *United States v. Bahadar*, 954 F.2d 821, 829-31 (2d Cir. 1992)).

[¶22]  However, this Court is "not bound by a federal circuit court decision." *First Wyo. Bank, N. A., Rawlins v. Trans Mountain Sales & Leasing, Inc.*, 602 P.2d 1219, 1225 (Wyo. 1979); *Metz v. Laramie Cnty. Sch. Dist. No. 1*, 2007 WY 166, ¶ 61, 173 P.3d 334, 349 (Wyo. 2007) ("[W]hile we consider relevant federal precedent, we are not bound by it.") (citing *Lovato v. State*, 901 P.2d 408, 411 (Wyo. 1995)). As Mr. Sousa concedes, Wyoming case law has not established a bright line rule that proceedings are to be conducted in English and that the proponent of a piece of evidence in a foreign language must provide a transcript. Though "[c]ommon sense" may indicate "juries need transcripts of recorded conversations when those conversations take place in a foreign language and are admitted into evidence before an English-speaking jury[,]" *Mendiola*, 707 F.3d at 738 n.2 (citing *Cruz-Rea*, 626 F.3d at 936), there is no clear and unequivocal rule under Wyoming law.[1]

---

[1]Mr. Sousa points to Wyo. Stat. Ann. § 1-11-101, which provides "[a] person is qualified to act as a juror if he is . . . [p]ossessed of sufficient knowledge of the English language." Wyo. Stat. Ann. § 1-11-101(a)(iii) (2023). This statute contemplates a proceeding conducted in English, but it does not address

[¶23]  Mr. Sousa argues that without an English translation, the audio exhibits were irrelevant and unduly prejudicial in violation of the clear and unequivocal rules of evidence.

[¶24]  Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 401. "All relevant evidence is admissible, except as otherwise provided by statute, by these rules, or by other rules prescribed by the Supreme Court. Evidence which is not relevant is not admissible." W.R.E. 402. "Whether a particular item of evidence is relevant depends on the unique facts of a case. It could be relevant at the time the question is asked, or it could become relevant later based on other evidence or argument." *Gutierrez*, 2020 WY 150, ¶ 23, 477 P.3d at 534 (Kautz, J., specially concurring). "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." W.R.E. 403.

[¶25]  Without an English transcript, the audios could have no relevance to a jury that would not be able to understand their contents. But "[u]nder the plain error standard of review, we reverse a trial court's decision only if it is so plainly erroneous that the judge should have noticed and corrected the mistake even though the parties failed to raise the issue." *Hernandez v. State*, 2010 WY 33, ¶ 21, 227 P.3d 315, 322 (Wyo. 2010) (quoting *Causey v. State*, 2009 WY 111, ¶19, 215 P.3d 287, 293 (Wyo. 2009)). At the time the district court admitted the exhibits, Mr. Sousa did not raise an objection, and we cannot say the district court should have noticed and corrected the mistake. The audio exhibits were introduced during Deputy Pugliese's testimony, early in the State's case-in-chief. Right before the exhibits were introduced and admitted, Deputy Pugliese testified he gave the recorded calls to Detective McKinney. The State had designated Detective McKinney as a witness and had not yet called him. The State had also designated and not yet called Ms. Piske to testify concerning her translation of the tapes, and after the exhibits were admitted into evidence, the State let the court know "we'll not be publishing them at this time." It therefore appeared at the time of their admission that the State would bring the audio exhibits back up to make them understandable to the jury and thus relevant.

[¶26]  Ultimately, the audio exhibits were never played as the State was able to elicit its desired testimony from Mr. Sousa. The State did not introduce an English transcription, play the audio for the jury, or call its translator to testify. Nonetheless, it appeared the State was prepared to do so when it sought admission of the audio exhibits, and we

the requirement of an English transcript. *See generally* Wyo. Stat. Ann. § 1-11-101 (2023). It is therefore insufficient to establish the clear and unequivocal rule of law Mr. Sousa seeks.

therefore cannot find a violation of a clear and unequivocal rule of law based on the relevance of the exhibits.

[¶27]   As to undue prejudice under W.R.E. 403, Mr. Sousa claims the only fact the audio exhibits made more or less probable was that Mr. Sousa was incarcerated in Colorado, which was irrelevant and unduly prejudicial. Additionally, he argues the jury was instructed to consider all the evidence, so the jury would have felt a responsibility to extract information from the exhibits, which was confusing or misleading. Though the relevance is doubtful, the asserted prejudice is speculative. Considering at the time the CDs were admitted their relevance would become apparent with additional testimony, the court had no reason to consider the undue prejudice that might arise under W.R.E. 403 if the physical CDs alone were admitted into evidence. The trial court's decision was not so plainly erroneous that the judge should have noticed and corrected the mistake even without objection by the parties.

[¶28]   We find no violation of a clear and unequivocal rule of law as to the district court's admission of the audio exhibits into evidence without an accompanying English transcription.

## II.     *The prosecutor did not commit misconduct during his cross-examination of Mr. Sousa or during his closing argument.*

[¶29]   Mr. Sousa "did not raise a prosecutorial misconduct objection to the district court. Accordingly, we review for plain error." *Freer v. State*, 2023 WY 80, ¶ 24, 533 P.3d 897, 904 (Wyo. 2023) (citing *King v. State*, 2023 WY 36, ¶ 33, 527 P.3d 1229, 1242 (Wyo. 2023)).

[¶30]   "This Court has defined prosecutorial misconduct as '[a] prosecutor's improper or illegal act (or failure to act), esp[ecially] involving an attempt to persuade the jury to wrongly convict a defendant or assess an unjustified punishment.'" *Freer*, 2023 WY 80, ¶ 24, 533 P.3d at 904 (quoting *King*, 2023 WY 36, ¶ 16, 527 P.3d at 1238). Prosecutorial misconduct "claims are intended 'to address gross prosecutorial improprieties that have deprived a criminal defendant of his or her right to a fair trial.'" *Freer*, 2023 WY 80, ¶ 25, 533 P.3d at 904-05 (quoting *Meece v. State*, 2023 WY 60, ¶ 17, 530 P.3d 597, 600 (Wyo. 2023)).

A. The Prosecutor's Cross-Examination of Mr. Sousa

[¶31]   Mr. Sousa argues the prosecutor committed misconduct in a few ways during his cross-examination of him. First, the prosecutor's reference to the time stamp of one of the audio exhibits constituted inadmissible hearsay. Second, the prosecutor argued facts not in the record and thereby acted as an unsworn witness because the prosecutor's questions pertaining to Mr. Sousa's conversation with Rafael and his subsequent reference of the

time stamp informed the court and the jury what was said during Mr. Sousa's conversation without an English translation in evidence.

[¶32]   The record is clear as to this issue. During his cross-examination of Mr. Sousa, the prosecutor asked Mr. Sousa questions relating to a prior conversation he had with Rafael, and the prosecutor also referenced one of the audio exhibits and its time stamp. However, the prosecutor did not violate a clear and unequivocal rule of law. "Prosecutorial misconduct is more than evidentiary error." *Freer*, 2023 WY 80, ¶ 25, 533 P.3d at 905 (citing *King*, 2023 WY 36, ¶ 33, 527 P.3d at 1242). Consequently, even if the prosecutor's statement referencing the time stamp of one of the audio exhibits was inadmissible hearsay as Mr. Sousa claims, it was no more than evidentiary error. *Adams v. State*, 2023 WY 85, ¶ 15, 534 P.3d 469, 474 (Wyo. 2023) (quoting *King*, 2023 WY 36, ¶ 16, 527 P.3d at 1238) ("We distinguish prosecutorial misconduct from an evidentiary error because otherwise, any evidentiary error which favors the State would be considered prosecutorial misconduct.").

[¶33]   Additionally, although the English translation of Mr. Sousa's conversation with Rafael was not admitted, and thus was outside of evidence, we cannot say the prosecutor's questions and statements regarding the conversation constituted misconduct. "[A] defendant who testifies in a criminal case may be cross-examined regarding his credibility just like any other witness," *Talley v. State*, 2007 WY 37, ¶ 10, 153 P.3d 256, 260 (Wyo. 2007) (citing *Jensen v. State*, 2005 WY 85, ¶ 20, 116 P.3d 1088, 1095 (Wyo. 2005)), and "the asking of certain questions assuming facts not in evidence [is] a part of appropriate trial strategy and tactics." *Daniel v. State*, 923 P.2d 728, 740 (Wyo. 1996). Mr. Sousa voluntarily took the stand and subjected himself to cross-examination. The prosecutor's statements and questions regarding Mr. Sousa's conversation with Rafael were not a "gross prosecutorial impropriet[y]" that deprived Mr. Sousa of his "right to a fair trial." *Freer*, 2023 WY 80, ¶ 25, 533 P.3d at 904-05 (quoting *Meece*, 2023 WY 60, ¶ 17, 530 P.3d at 600).

B.  The Prosecutor's Closing Argument

[¶34]   Mr. Sousa argues the prosecutor committed misconduct by acting as an unsworn witness when he used what Mr. Sousa said in his recorded conversation during closing argument. But as the State notes, it is difficult to discern "which statements [Mr. Sousa] is challenging" because he does not "specify any part of the [prosecutor's] closing argument where error occurred." Mr. Sousa only points to the prosecutor's "use of that information [to whom and what was said during Mr. Sousa's recorded conversation] later in closing argument." From his Statement of the Case, Mr. Sousa seems to take issue with the prosecutor's "theme of what could this trained fighter do if he was in a house alone with a defenseless woman." He specifically points to the prosecutor's statements: "you find yourself in a bedroom with a woman. You could do worse things than you can even

9

imagine[]" and "Imagine what a man could do with a woman when they are in a bedroom with them."

[¶35] The record does not support Mr. Sousa's contention that the prosecutor was referring to the audio conversation rather than Mr. Sousa's own testimony, and we find no violation of a clear and unequivocal rule of law. "The purpose of closing argument is to allow counsel, including the prosecutor, to offer ways for the jury to view the evidence, and to draw reasonable inferences therefrom." *Harris v. State*, 2008 WY 23, ¶ 19, 177 P.3d 1166, 1172 (Wyo. 2008) (citing *Belden v. State*, 2003 WY 89, ¶ 48, 73 P.3d 1041, 1089 (Wyo. 2003); *Phillips v. State*, 835 P.2d 1062, 1073 (Wyo. 1992)). A prosecutor is "afforded wide latitude during closing argument and may comment on evidence admitted during trial and suggest reasonable inferences." *Hartley v. State*, 2020 WY 40, ¶ 13, 460 P.3d 716, 720 (Wyo. 2020) (citing *Bogard v. State*, 2019 WY 96, ¶ 19, 449 P.3d 315, 321 (Wyo. 2020)). "We evaluate the 'propriety of closing arguments in the context of the entire argument and compare them with the evidence produced at trial.'" *Hartley*, 2020 WY 40, ¶ 16, 460 P.3d at 720 (quoting *Dixon v. State*, 2019 WY 37, ¶ 41, 438 P.3d 216, 231 (Wyo. 2019)). Mr. Sousa himself provided the testimony regarding what a trained fighter could do in a house alone with a woman—testimony the prosecutor could properly refer to in closing, without reference to the CDs.

[¶36] The prosecutor did not commit misconduct during his cross-examination of Mr. Sousa or during his closing argument.

C. No Material Prejudice

[¶37] Mr. Sousa bears the burden of proving material prejudice under our plain error standard of review. *Deeds v. State*, 2014 WY 124, ¶ 21, 335 P.3d 473, 479 (Wyo. 2014) ("The appellant bears the burden of proving plain error[.]"). "Material prejudice exists when the appellant demonstrates a reasonable probability that the jury verdict would have been more favorable in the absence of the error." *Gutierrez*, 2020 WY 150, ¶ 5, 477 P.3d at 531 (citing *Larkins v. State*, 2018 WY 122, ¶ 94, 429 P.3d 28, 49-50 (Wyo. 2018)). "Merely asserting prejudice without a proper showing is not enough to meet the plain error standard." *Doherty v. State*, 2006 WY 39, ¶ 23, 131 P.3d 963, 971 (Wyo. 2006) (citing *Bhutto v. State*, 2005 WY 78, ¶ 44, 114 P.3d 1252, 1268 (Wyo. 2005)).

[¶38] Mr. Sousa has not met that burden, considering the great weight of evidence against him. The jury was presented with testimony from KB regarding her encounter with Mr. Sousa; testimony from Mr. Sousa, where he admitted he did not have an explanation for KB's injuries; and testimony, photographs, and reports relating to DNA evidence, KB's scared and shaken demeanor, and KB's physical injuries that corroborated her version of events. Mr. Sousa's claim of prejudice is further weakened by the fact he took the stand, and through his own testimony on cross and redirect, confirmed the effects of his strength. Mr. Sousa was not materially prejudiced.

10

### III.    The district court did not commit structural error by providing the jury with audio equipment to listen to the audio exhibits.

[¶39]  The district court provided the jury with audio equipment to listen to the audio exhibits. Mr. Sousa did not object, and he now argues on appeal this Court should find structural error. We decline to do so.

[¶40]  "'Structural error' is essentially an error so grave that it is grounds for reversal without any showing of prejudice. It is a fundamental constitutional error 'so intrinsically harmful as to require automatic reversal (i.e., 'affect substantial rights') without regard to their effect on the outcome.'" *Yazzie v. State*, 2021 WY 72, ¶ 13, 487 P.3d 555, 560 (Wyo. 2021) (quoting *Neder v. United States*, 527 U.S. 1, 7, 119 S. Ct. 1827, 1833, 144 L.Ed.2d 35 (1999)).

> The purpose of the structural error doctrine is to ensure insistence on certain basic, constitutional guarantees that should define the framework of any criminal trial. Thus, the defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'

*Yazzie,* 2021 WY 72, ¶ 14, 487 P.3d at 560 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 1265 (1991)). The United States Supreme Court has

> recognized three bases for finding structural error: (1) 'if the right at issue is not designed to protect the defendant from erroneous conviction but instead protects some other interest'; (2) 'if the effects of the error are simply too hard to measure'; or (3) 'if the error always results in fundamental unfairness.'

*Yazzie,* 2021 WY 72, ¶ 15, 487 P.3d at 561 (quoting *Weaver v. Massachusetts*, 582 U.S. 286, 295-96, 137 S. Ct. 1899, 1908, 198 L.Ed.2d 420 (2017)). This Court has specified "[t]he bar for finding structural error is high." *Tarpey v. State*, 2023 WY 14, ¶ 34, 523 P.3d 916, 927 (Wyo. 2023), cert. denied, 144 S. Ct. 80, 217 L. Ed. 2d 15 (2023) (quoting *Anderson v. State*, 2014 WY 74, ¶ 21, 327 P.3d 89, 95 (Wyo. 2014)).

[¶41]  Mr. Sousa argues this Court should find structural error because the effects of allowing the jury unrestricted access to the audio exhibits are too hard to measure. Putting aside the question of the relevance of audio in a language that presumably no juror understood, allowing the jury unsupervised access to the audio recordings was error. There can be two types of exhibits: testimonial and non-testimonial, and whether an exhibit is testimonial or non-testimonial dictates how the court is to manage the jury's

access to the evidence during deliberations. *See Hicks v. State*, 2021 WY 2, ¶¶ 26, 27, 478 P.3d 652, 660-61 (Wyo. 2021). "In general, the trial court has discretion over whether to permit non-testimonial exhibits into the jury room during deliberations." *Munoz v. State*, 849 P.2d 1299, 1301 (Wyo. 1993), *overruled on other grounds by Klahn v. State*, 2004 WY 94, 96 P.3d 472 (Wyo. 2004) (citing *Stephens v. State*, 774 P.2d 60, 70 (Wyo. 1989); *Stone v. State*, 745 P.2d 1344, 1349 (Wyo. 1987)). "Testimonial materials, on the other hand, may not be sent to the jury for unsupervised review." *Hicks*, 2021 WY 2, ¶ 27, 478 P.3d at 660-61 (citing *Munoz*, 849 P.2d at 1301). "The rule was designed to prevent juries from 'unduly emphasizing [the submitted testimony] over all of the other testimony in the case.'" *Hicks*, 2021 WY 2, ¶ 27, 478 P.3d at 661 (quoting *Munoz*, 849 P.2d at 1301). When it comes to testimonial evidence, this Court has emphasized the trial court "must ascertain exactly why the jury wants to view the [testimonial evidence], must decide whether the [evidence] will give the jury key facts without unduly emphasizing a witness's testimony, and must only show the relevant portions under carefully controlled procedures." *Chambers v. State*, 726 P.2d 1269, 1276-77 (Wyo. 1986), *receded from on other grounds by Lancaster v. State*, 2002 WY 45, ¶ 16, 43 P.3d 80, 88 (Wyo. 2002). The record shows no independent review by the district court to determine whether the audio exhibits were testimonial or non-testimonial; instead, the court "just provided them with the equipment" to listen to the tapes. The district court's decision goes firmly against our precedent.

[¶42]  However, Mr. Sousa points to no authority holding that the type of error presented in this case was structural. "We have recognized structural errors such as a complete deprivation of the right to trial counsel or the lack of an impartial judge." *Yazzie*, 2021 WY 72, ¶ 13, 487 P.3d at 560 (quoting *Mellott v. State*, 2019 WY 23, ¶ 24, 435 P.3d 376, 385 (Wyo. 2019)). We cannot find the court's decision to allow the jury to listen to the audio exhibits "affect[ed] the framework within which the trial proceed[ed] rather than being simply an error in the trial process itself." *Yazzie*, 2021 WY 72, ¶ 14, 487 P.3d at 560 (quoting *Fulminante*, 499 U.S. at 310, 111 S. Ct. at 1265). Accordingly, there was no structural error.

[¶43]  As there was no structural error and defense counsel did not object, this Court would ordinarily apply a plain error standard of review. *Sorensen v. State*, 2019 WY 80, ¶ 24, 444 P.3d 1283, 1289 (Wyo. 2019). However, we have held that if the defendant knows of an irregularity with the jury, such as misconduct or exposure to information outside of the evidence, the defendant waives any claim of error if he does not object. *See Pena v. State*, 2013 WY 4, 294 P.3d 13 (Wyo. 2013); *Vlahos v. State*, 2022 WY 129, 518 P.3d 1057 (Wyo. 2022). For example, this Court has previously considered cases where "jurors or potential jurors may have been exposed to information which could have improperly influenced them." *Pena*, 2013 WY 4, ¶ 50, 294 P.3d at 23. In *Pena*, the defendant appealed the district court's denial of his motion for a new trial. *Id.* at ¶ 45, 294 P.3d at 22. The defendant's motion "alleged that witnesses for the State [had] talked about aspects of the case in front of prospective jurors who might have been seated as

trial jurors." *Id.* The defendant failed to raise his concerns with the trial court during the trial. *Id.* at ¶ 46, 294 P.3d at 22. This Court affirmed the district court's denial of the motion for a new trial and held "if a defendant or his counsel knows of potential impropriety in connection with the jury during trial, and fails to object before the return of the verdict, he waives any right to a new trial based on that impropriety." *Id.* at ¶ 50, 294 P.3d at 23.

[¶44] This Court expanded on *Pena*'s holding more recently in *Vlahos v. State*, 2022 WY 129, 518 P.3d 1057 (Wyo. 2022). *Vlahos* involved "juror misconduct and inadvertent exposure to material that could potentially improperly influence a juror." *Vlahos*, 2022 WY 129, ¶ 66, 518 P.3d at 1073-74 (citing *Pena*, 2022 WY 129, ¶ 50, 294 P.3d at 23). In *Vlahos*, a juror had been exposed to a video on social media of the defendant discussing his case. *Vlahos*, 2022 WY 129, ¶¶ 26, 27, 518 P.3d at 1066. The defendant was given the chance to question the juror, but he did not. *Id.* at ¶ 66, 518 P.3d at 1073-74. He also did not object to the juror staying on the jury and did not ask for an alternate to replace him. *Id.*, 518 P.3d at 1074. When the defendant argued he was entitled to a new trial because the juror should have been removed, this Court found waiver "[b]ecause he did not object prior to the return of the verdict." *Id.*

[¶45] Here, defense counsel did not object to the court providing the audio equipment to the jury. Then, when the jury asked if it could receive a transcript of the audio exhibits, defense counsel said "No . . . Let them wonder." Mr. Sousa has waived this claim of error.

## *CONCLUSION*

[¶46] We find no reversible error and affirm Mr. Sousa's conviction. The district court did not commit plain error when it admitted the audio exhibits into evidence without an English transcription. The prosecutor did not commit misconduct during his cross-examination of Mr. Sousa or during his closing argument. The district court erred when it provided the jury with equipment to listen to the audio exhibits without first screening the recordings, but the error was not structural and Mr. Sousa waived it by failing to object.

13